**STATE of Iowa, Appellee,**

v.

**Robert Steven WINFREY, Appellant.**

**No. 55861.**

Supreme Court of Iowa.

Aug. 28, 1974.

Anthony M. Critelli, Des Moines, and Michael J. Laughlin, Urbandale, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

MOORE, Chief Justice.

Defendant, Robert Steven Winfrey, appeals from judgment entered on a jury verdict convicting him of first degree murder. He was charged with killing Gerald Koder during the robbery of a Des Moines service station.

Defendant-appellant asserts the trial court erred (1) in overruling his motion to suppress evidence of his oral admissions made while in custody and (2) refusing to sustain his challenge for cause of a prospective juror who had experienced trouble with blacks.

I. The record reflects the following facts. About 9:50 p. m., March 29, 1970 two girls discovered the body of Gerald Koder, attendant, lying in a pool of blood on the floor of Vickers service station at East 16th and University Avenue in Des Moines. Police investigation revealed Koder had been shot once in the head. His pockets had been emptied. A comb and pack of cigarettes were lying next to the body. Defendant's fingerprints were found on the cigarette pack. His palm print was found on the service station door. Koder's empty billfold was found a block from the station.

Defendant, then age 17, and his 15 year old accomplice, Thadius Allen, were arrested in Davenport, Iowa and returned to Des Moines on April 6, 1972. After arraignment they were committed to the county jail. Two attorneys and his mother advised defendant not to discuss the case with anyone. He was told that anything he might say could be used against him.

On Sunday afternoon April 9 defendant, with Allen present, talked to Polk County deputy sheriff Alfred J. Baumann and Lieutenant Ray Steiner, a Des Moines police officer. He related how he had obtained a gun from another youth for the express purpose of robbing the Vickers Station and the details of the robbery and shooting of Koder.

On September 8, 1972 defendant filed a motion to suppress any testimony by Baumann and Steiner pertaining to defendant's statements and admissions. He alleged (1) he had not been informed of his constitu-

tional rights, (2) that even if the Miranda warnings (Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974) were given, Winfrey lacked intelligence and maturity to knowingly, understandingly and intelligently waive his rights, and (3) his confession was not made voluntarily.

■ II. To meet due process requirements the trial court was required to conduct a pretrial evidentiary hearing to consider the totality of the circumstances and determine the admissibility of defendant's statements and admissions. Jackson v. Denno, 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908, 915, 1 A.L.R.3d 1205; State v. Fetters, Iowa, 202 N.W.2d 84, 88; State v. Holland, 258 Iowa 206, 215, 138 N.W.2d 86, 90; State v. Leiss, 258 Iowa 787, 789, 140 N.W.2d 172, 174.

■ The trial court held such a pretrial evidentiary hearing at which the State had the burden to prove by a preponderance of the evidence defendant's confession was voluntarily, knowingly and intelligently made. Lego v. Twomey, 404 U.S. 477, 487–489, 92 S.Ct. 619, 30 L.Ed.2d 618, 626, 627; State v. Cullison, Iowa, 215 N.W.2d 309, 314; State v. Rank, Iowa, 214 N.W.2d 136, 138 and citations.

Deputy Sheriff Baumann testified he had had prior jail contacts and visits with defendant and that on Sunday morning April 9 defendant sent a note asking to talk to Baumann. A meeting resulted and when during the conversation Winfrey made reference to the pending murder charge, Baumann stopped the conversation. Baumann testified he cautioned defendant about the serious nature of the charge and gave him the Miranda warnings, to which defendant indicated he knew his rights and stated he wished to talk about his involvement. Further that defendant was asked if he wanted his attorney or parents to be present to which defendant answered in the negative because he had lied to them earlier. After some additional conversation Baumann had Thadius Allen brought from his jail cell. The two youths then expressed their desire to talk with a police officer, preferably Ray Steiner.

Baumann further testified he telephoned Steiner and told him Winfrey and Allen wished to talk to him about the shooting. Steiner refused to meet with the two unless their parents or attorneys were present. Later Steiner received a second telephone call at which time Winfrey and Allen personally asked Steiner to talk to them. Steiner again expressed reluctance to have any discussion without their parents or attorneys being present. The two repeated their request that Steiner come to the jail and talk with them. Steiner then agreed.

Upon Steiner's arrival at the county jail Baumann and the two youths were in a small office. Steiner and Baumann testified in detail of the conversation which followed. After reading the Miranda warnings, Steiner advised them of the serious nature of the charge. He specifically advised both youths that he and Baumann would testify in court about what was said. Winfrey rejected Steiner's suggestion the conversation be recorded. Both told Steiner they did not want either their parents or attorneys present because they had lied to them earlier. Winfrey and Allen then related the events of the robbery and shooting of Koder.

Winfrey, then 18 years of age, related his educational background. He had completed ten years of school and had been in special classes for slow learners. Since age 12 he had lost time from school during periods he was in Eldora or jail. His testimony contradicted several of Baumann's and Steiner's statements. However he admitted telephoning Steiner and requesting Steiner to come to the jail, and that Steiner read to him the Miranda warnings including the fact that anything he said could be used against him. He admitted he did not want his parents or attorney present during his talks with Baumann and Steiner. His main contention was that both officers had assured him of a lighter sentence if he

talked. Both officers denied giving any such assurances. Defendant stated that since he was not giving a written statement or signing anything, he thought the oral statement could not be used against him.

Pursuant to court order Winfrey was examined by Dr. Paul Loeffelholz, a psychiatrist, at the Iowa Security and Medical Facility. Dr. Loeffelholz testified defendant does not have a typical mental disorder and that tests indicated Winfrey was in the low average range of intelligence with an I.Q. score range of approximately 85 to 90. He opined Winfrey was "some place in the fourteen to fifteen year old range of mental age" and capable of understanding a statement of rights allegedly read to him but depending upon how the statement was presented to him. His cross-examination by the county attorney included: "Because of his experience, there is no doubt that Mr. Winfrey knows what happens to you if you are found guilty of something in a court of law. * * *. It is still my opinion that Mr. Winfrey was competent and able to make decisions at the time of his apprehension. This would, however, depend upon the circumstances and explanations given to him."

The above sets out most of the evidence which bears on the issues here involved. Thadius Allen did not testify.

The trial court's ruling on defendant's motion to suppress includes:

" * * * Having considered the arguments of counsel, testimony of the witnesses and the other evidence, the court finds as follows under the totality of the circumstances as shown by the record made upon said hearing:

"1. Defendant, Robert Steven Winfrey, was fully warned and advised of his constitutional rights prior to his making the alleged statements to witnesses Steiner and Baumann, which are the subject of Defendant's Motion to Suppress.

"2. Defendant understood the nature and extent of his said rights, including the consequences of his making said alleged statements.

"3. Prior to making said alleged statements, Defendant voluntarily, knowingly, and intelligently waived his right to remain silent and his right to have his attorney present and assist him.

"4. Defendant voluntarily, knowingly, and intelligently made said alleged statements after having been advised of his said rights.

"5. Said alleged statements were not secured by force, threat, promises or deception, but were volunteered by Defendant.

"NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant, Robert Steven Winfrey's said Motion to Suppress be and the same hereby is, overruled upon paragraphs, 1, 2, 3, and 4 threrof."

We have adopted the so-called "orthodox" rule rather than the "Massachusetts" rule as our method of determining the question of voluntariness and admissibility. Under our rule the trial court's determination of admissibility is final and, if admitted, the weight to be given that evidence is left to the jury in the main trial. State v. Holland, 258 Iowa 206, 215, 138 N.W.2d 86, 91; State v. Leiss, 258 Iowa 787, 789, 140 N.W.2d 172, 174 and citations in each.

Accordingly such final order can be considered on appeal after trial and judgment. For our recent analysis of records to be made in motions to suppress as compared to motions in limine, see Twyford v. Weber, Iowa, 221 N.W.2d 919, filed August 28, 1974.

III. On this appeal our review of the question of admissibility requires we examine the totality of circumstances—the attendant facts—as shown by the record made at the pretrial hearing. State v. Fet-

ters, Iowa, 202 N.W.2d 84, 90; State v. Holderness, Iowa, 191 N.W.2d 642, 646; State v. Niccum, Iowa, 190 N.W.2d 815, 822 and citations.

Defendant's first alleged ground to suppress—he had not been advised of his constitutional rights—apparently has been abandoned on this appeal. No brief point or argument in reference thereto is included in defendant-appellant's brief. This is understandable in view of the testimony of Baumann and Steiner and of defendant that Steiner did read the Miranda warnings to defendant upon arrival at the county jail.

Defendant relies heavily on the second ground being that he lacked intelligence and maturity to understandingly and intelligently waive his rights.

■ The rule is well established that a confession will not be excluded on the sole ground the accused is mentally weak. Mental subnormality does not itself deprive the confession of voluntariness or bar its admission in evidence, so long as the subnormality does not deprive the person in question of the capacity to understand the meaning and effect of the confession. Of course subnormality is a factor to be considered in determining the issues of voluntariness and admissibility. State v. Fetters, Iowa, 202 N.W.2d 84, 89; State v. Faught, 254 Iowa 1124, 1130, 120 N.W.2d 426, 429, 430 and citations.

Defendant's contention his confession was not voluntary because the officers had assured him he would receive a lighter sentence if he talked is supported only by his testimony. It is specifically denied by each police officer. Considering the totality of the circumstance and the entire record we believe no such assurance was made.

■ Although not a part of his motion defendant on appeal argues involuntariness because his attorney was not present when he talked to the officers. Defendant admitted and the record is clear he rejected the officer's suggestion his parents or attorney should be present. There is no merit to his belated contention of involuntariness due to absence of counsel. The right to counsel during the period of custodial interrogation may be waived by an accused. State v. Williams, Iowa, 182 N.W.2d 396, 400 and citations.

■ From our own independent examination of the record we find the statements and admissions made by defendant to officers Baumann and Steiner were knowingly, intelligently and voluntarily made and admissible in evidence at his trial. Defendant's first assignment of error is without merit.

■ IV. On voir dire, Roy Butler, a venireman, related the fact he and his wife had had trouble with two young blacks while they were living in a black neighborhood. They moved because of that trouble. Butler also stated he could be fair and impartial to defendant. The trial court denied defendant's challenge of Butler for cause. Defendant exercised a peremptory challenge and Butler did not serve. Defendant argues the trial court committed reversible error by denying his challenge for cause. We do not agree.

We have repeatedly held trial courts are vested with broad discretionary power in acting on challenges as to a juror for cause. State v. Houston, Iowa, 206 N.W.2d 687, 689 and citations. We find no abuse of discretion by the trial court.

Having found no reversible error, the trial court judgment must be affirmed.

Affirmed.