STATE of Iowa, Appellee,

v.

Thadius Alonzo ALLEN, Appellant.

No. 56480.

Supreme Court of Iowa.

Dec. 18, 1974.

**238**

Raymond Rosenberg, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Jim P. Robbins, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

Heard by MOORE, C. J., and LeGRAND, REES, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Defendant appeals his conviction by jury and sentence for second degree murder in violation of Code § 690.1. The State alleged that he and Robert Winfrey murdered a gas station attendant during an armed robbery in Des Moines on March 29, 1972. Defendant contends the trial court erred in overruling his pretrial motion to suppress evidence and in overruling his motion for mistrial made during the trial. We reverse because we find the motion for mistrial should have been sustained.

I. At the time of the alleged offense defendant was 15 years old. He was arrested April 6, 1972, and after appearing in municipal court was placed in the jurisdiction of the juvenile court. See § 232.64, The Code. While incarcerated in the juvenile ward of the county jail on April 9, 1972, defendant and Winfrey made oral statements to jailer Alfred J. Baumann and city detective Ray Steiner.

The circumstances under which these statements were made are fully detailed in the opinion on Winfrey's appeal and will not be repeated here. See State v. Winfrey, 221 N.W.2d 269 (Iowa 1974). Although defendant was represented by a lawyer, his lawyer was not present when he and Winfrey talked to the officers.

Defendant filed a pretrial motion to suppress the testimony of officers Baumann and Steiner regarding his alleged oral admissions. He relied on provisions of Amendments 5, 6, and 14 of the United States Constitution. After hearing the motion was overruled.

The sole basis for reversal asserted in relation to this ruling is that the trial court should have sustained the motion on the ground the statements were made in the absence of counsel after adversary proceedings had commenced. Defendant maintains that no admissions obtained in the absence of counsel after adversary proceedings are initiated can be used as evidence without violating the accused's right to counsel assured by the sixth and fourteenth amendments.

■ We agree with defendant that he had an absolute right to counsel during custodial interrogation, but we do not agree with his contention that the right could not be waived. It is well established that the right to counsel during custodial interrogation may be waived by an accused. State v. Winfrey, supra, at 273; United States v. Crisp, 435 F.2d 354 (7 Cir. 1971), cert. denied, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116; Moore v. Wolff, 495 F.2d 35 (8 Cir.

1974), and citations. Defendant's reliance on Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), is misplaced. In *Massiah* the accused's statements were obtained by eavesdropping, and there was no claim or evidence of waiver of the right to counsel.

■ Defendant does not challenge the evidence demonstrating he waived his right to counsel in this case. The record shows he was fully and repeatedly advised of his rights and of the serious nature of the offense. He said he did not want either his parents or his lawyer present while he talked to the officers. Our independent evaluation of the totality of circumstances, giving special consideration to defendant's youth, convinces us he voluntarily and intelligently waived his right to counsel. See State v. Winfrey, supra; State v. Cooper, 217 N.W.2d 589 (Iowa 1974).

Although defendant had not yet been transferred from juvenile court for prosecution under the criminal law, he does not contend he was misled as to the consequences of his admissions by the ameliorative and rehabilitative emphasis in the juvenile court system. There is no indication he would not have waived the right to counsel if he had known he would be prosecuted as an adult. See State v. Loyd, 297 Minn. 442, 212 N.W.2d 671 (1973); State v. Gullings, 244 Or. 173, 416 P.2d 311 (1966); cf. Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161 (1961).

The trial court did not err in overruling defendant's motion to suppress on the basis now urged.

II. Defendant's motion for mistrial was based on events which occurred when the State called defendant's alleged accomplice Robert Winfrey as a witness. Before trial the State served defendant with a notice of additional testimony reciting that Winfrey would testify regarding his presence with the defendant at the time and place of the robbery and murder "and to other matters concerning the guilt of the defendant."

At trial the State first introduced evidence tending to prove corpus delicti. Then fingerprint evidence was presented which placed Winfrey at the scene of the crime. In this setting the State called Winfrey as a witness.

Winfrey appeared with counsel, Anthony M. Critelli. At attorney Critelli's request a record was made out of the presence of the jury. Critelli said he represented Winfrey in his earlier trial for the same offense, Winfrey's appeal from conviction was still pending, Winfrey did not testify in his trial, and Winfrey told him he would assert his privilege against self-incrimination if called as a witness in defendant's trial. Critelli also advised the court he had informed the prosecuting attorney Winfrey would assert his privilege if called to testify. The trial court said, "I will certainly recognize his privilege if and in the event he claims it."

The jury returned, and Winfrey was sworn as a witness. Then the following record was made:

(Direct examination by assistant county attorney Young)

Q. Would you state your name, please? A. Robert Stephen Winfrey.

Q. How old are you, Mr. Winfrey? A. 18.

Q. Where do you presently reside? A. Anamosa, Iowa, reformatory.

Q. Mr. Winfrey, I call your attention to the evening of March 29, 1972, and ask you if at that time you were living in the City of Des Moines, Iowa. A. Yes.

Q. Were you in the City of Des Moines, Iowa, on that evening? A. I refuse to answer the question on the ground that it may tend to incriminate me.

Q. On the evening of March 29, 1972, did you have the opportunity to be in the company of one Thadius Alonzo Allen?

\*   \*   \*   \*   \*   \*

A. I refuse to answer the question on the ground that it may tend to incriminate me.

Q. Mr. Winfrey, if I was to ask you any questions concerning an occurrence which occurred on the evening of March 29, 1972, in the City of Des Moines where an alleged robbery and murder took place at East 16th and University, would your answers be the same to any and all of those questions as those answers you have just given me? A. I refuse to answer on the ground that it may tend to incriminate me.

MR. YOUNG. I would have no further questions of this witness, Your Honor.

THE COURT. Mr. Rosenberg, any questions?

MR. ROSENBERG. Your Honor, at this time I respectfully move for mistrial and request permission to make a further record outside the presence of the jury.

THE COURT. You may.

In support of his motion for mistrial defense counsel offered testimony of the prosecutor, assistant county attorney Harold A. Young. The prosecutor acknowledged he prepared the notice of additional testimony without knowing whether Winfrey would testify. He admitted he was advised by Critelli that Critelli would advise Winfrey to assert his privilege. Defense counsel then asked, "Did you then * * * in good faith have a belief that Mr. Winfrey would testify as to any of the matters contained in that notice?" The prosecutor responded, "I had no belief that Mr. Winfrey would testify. However, I felt it was necessary for the prosecution to put him on the stand to see if in fact he would assert his fifth amendment privilege."

In overruling the motion for mistrial, the trial court said in part:

" * * * [H]e could either on the advice of counsel, though it is highly unlikely, but it is a possibility, or, contrary to the advice of counsel, testify, and that could have happened even after the record that was made. He could have gotten on the stand and decided he wanted to tell his story, whatever it may be,

either with or without Mr. Critelli's advice and consent.

"I would point out also that the privilege which Mr. Winfrey has exercised is his; it is not Allen's, and I don't believe that when we have a witness who, according to the State's * * * good faith theory of the case, could be the most important witness in the case, * * we have to say that he cannot be put on the stand because of some adverse effect it might have on the defendant."

No cautionary instruction to the jury regarding Winfrey's assertion of the privilege was either requested or given.

■ It is improper for a prosecutor to require a witness to claim his privilege against self-incrimination in the presence of the jury when, as in this case, the prosecutor knows or has reason to anticipate the witness will assert it. Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); Fletcher v. United States, 118 U.S.App.D.C. 137, 332 F.2d 724 (1964); Robbins v. Small, III, 371 F.2d 793 (1 Cir. 1967), cert. denied, 386 U.S. 1033, 87 S.Ct. 1483, 18 L.Ed.2d 594; United States v. Wolfson, 405 F.2d 779 (2 Cir. 1968), cert. denied, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479; United States v. Tucker, 267 F.2d 212 (3 Cir. 1959); San Fratello v. United States, 340 F.2d 560 (5 Cir. 1965); United States v. Compton, 365 F.2d 1 (6 Cir. 1966), cert. denied, 385 U.S. 956, 87 S.Ct. 391, 17 L.Ed.2d 303; United States v. King, 461 F.2d 53 (8 Cir. 1972); United States v. Harding, 432 F.2d 1218 (9 Cir. 1970); De Gesualdo v. People, 147 Colo. 426, 364 P.2d 374 (1961); Commonwealth v. Terenda, 451 Pa. 116, 301 A.2d 625 (1973).

This principle is recognized in ABA Standards, The Prosecution Function, § 5.7(c) (1971):

"A prosecutor should not call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of the privilege. In some instances, as

defined in the Code of Professional Responsibility, doing so will constitute unprofessional conduct."

When an alleged accomplice invokes the privilege in the presence of the jury, prejudice arises from the human tendency to treat the claim of privilege as a confession of crime, creating an adverse inference which an accused is powerless to combat by cross-examination.

Not every instance of such prosecutorial misconduct is sufficient to deny an accused a fair trial. In State v. Whitfield, 212 N.W.2d 402, 408 (Iowa 1973), we quoted the criteria for determining when reversible error occurs:

" '[I]t must appear directly or inferentially

(1) that the witness appears to have been so closely implicated in the defendant's alleged criminal activities that the invocation by the witness of a claim of privilege when asked a relevant question tending to establish the offense charged will create an inference of the witness' complicity, which will, in turn, prejudice the defendant in the eyes of a jury;

(2) that the prosecutor knew in advance or had reason to anticipate that the witness would claim his privilege, or had no reasonable basis for expecting him to waive it, and, therefore, called him in bad faith and for an improper purpose;

(3) that the witness had a right to invoke his privilege;

(4) that defense counsel made timely objection and took exception to the prosecutor's misconduct; and

(5) that the trial court refused or failed to cure the error by an appropriate instruction or admonition to the jury.' "

Examined in light of those criteria we conclude it was reversible error for the trial court to overrule defendant's motion for mistrial in this case. Only the second and fourth criteria are in controversy. As to the second, the prosecutor acknowledged

he had no basis for believing Winfrey would waive his privilege. He knew Winfrey had asserted the privilege in his own trial. His appeal was still pending. Winfrey's counsel said immediately before Winfrey was called as a witness that Winfrey would assert his privilege. In these circumstances it was improper for the prosecutor to put Winfrey on the stand. If he thought there was a reasonable chance Winfrey would waive the privilege, the correct procedure would have been to request an opportunity to examine Winfrey out of the jury's presence to see if he would do so.

The fourth criterion presents a closer question. The State argues defendant did not make timely objection to the calling of Winfrey as a witness. The principle involved here was first invoked in the motion for mistrial.

Although it would have been better for defense counsel to raise the question before Winfrey was put on the stand, counsel may have believed from the trial judge's remarks before Winfrey was called that the judge thought the procedure employed by the State was necessary and justified. In overruling the motion for mistrial the judge made it clear he shared the prosecutor's view that the State had a right to require Winfrey to invoke the privilege in the presence of the jury. In these circumstances we are unable and unwilling to hold defendant waived his objection by not making it earlier. Cf. State v. Boose, 202 N.W.2d 368 (Iowa 1972). We hold that the prompt motion for mistrial was sufficient to preserve the issue for review. Cf. United States v. Compton, supra, 365 F.2d at 6; United States v. King, supra, 461 F.2d at 56 n. 2.

It was reversible error for the trial court to overrule defendant's motion for mistrial. Defendant is entitled to a new trial.

Reversed and remanded.