**Robert Anthony WILLIAMS, Petitioner,**

v.

**Crispus NIX, Warden, Iowa State Penitentiary, and Attorney General of the State of Iowa, Respondents.**

**Civ. No. 80–450–D.**

United States District Court,
S. D. Iowa, C. D.

Dec. 18, 1981.

Robert Bartels, Prisoner Assistance Clinic, Iowa City, Iowa, for petitioner.

Thomas D. McGrane, Asst. Atty. Gen. of Iowa, Des Moines, Iowa, for respondents.

## MEMORANDUM OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS

VIETOR, District Judge.

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by an inmate of the Iowa State Penitentiary at Fort Madison, Iowa, where respondent Crispus Nix is the warden.[1] Petitioner is serving a sentence of life in prison imposed on August 19, 1977, by Iowa District Court Judge J. P. Denato after petitioner was found guilty by a jury of first degree murder. The conviction was affirmed by the Iowa Supreme

---

1. Since this action was commenced, named defendant David Scurr ceased serving as warden of the Iowa State Penitentiary and he has been replaced by Crispus Nix, who is automatically substituted as party defendant under the provisions of Fed.R.Civ.P. 25(d)(1).

Court. *State v. Williams*, 285 N.W.2d 248 (Iowa 1979).

The court heard evidence and oral arguments, and the case is now fully submitted for decision upon the record, including transcripts of proceedings in state court, affidavits submitted by the parties, evidence received by this court, and the briefs and oral arguments of counsel.

## FIRST CONVICTION VACATED

The conviction under review is the petitioner's second conviction for the same offense. His first conviction was, after first being affirmed by the Iowa Supreme Court, *State v. Williams*, 182 N.W.2d 396 (Iowa 1971), vacated in a federal habeas corpus proceeding. *Williams v. Brewer*, 375 F.Supp. 170 (S.D.Iowa), aff'd, 509 F.2d 227 (8th Cir. 1974), aff'd sub nom., *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977). The United States Supreme Court held that petitioner's constitutional right to counsel had been violated by a Des Moines police detective shortly after his arrest and that certain evidence obtained as a result of that violation had been wrongfully admitted into evidence at his trial.

## USE OF INEVITABLE DISCOVERY DOCTRINE

Petitioner asserts that admission of evidence of discovery of the victim's body and other evidence resulting from that discovery violated his Fifth Amendment right not to incriminate himself and his Sixth Amendment right to counsel, both applicable to states through the Fourteenth Amendment, under the "fruit of the poisonous tree doctrine." This contention requires a review of some facts and the holdings of the federal courts in the first habeas corpus proceeding. The facts are well recited in the United States Supreme Court opinion in *Brewer v. Williams, supra,* 430 U.S. at 390–93, 97 S.Ct. at 1235–36:

On the afternoon of December 24, 1968, a 10-year-old girl named Pamela Powers went with her family to the YMCA in Des Moines, Iowa, to watch a wrestling tournament in which her brother was participating. When she failed to return from a trip to the washroom, a search for her began. The search was unsuccessful.

Robert Williams, who had recently escaped from a mental hospital, was a resident of the YMCA. Soon after the girl's disappearance Williams was seen in the YMCA lobby carrying some clothing and a large bundle wrapped in a blanket. He obtained help from a 14-year-old boy in opening the street door of the YMCA and the door to his automobile parked outside. When Williams placed the bundle in the front seat of his car the boy "saw two legs in it and they were skinny and white." Before anyone could see what was in the bundle Williams drove away. His abandoned car was found the following day in Davenport, Iowa, roughly 160 miles east of Des Moines. A warrant was then issued in Des Moines for his arrest on a charge of abduction.

On the morning of December 26, a Des Moines lawyer named Henry McKnight went to the Des Moines police station and informed the officers present that he had just received a long-distance call from Williams, and that he had advised Williams to turn himself in to the Davenport police. Williams did surrender that morning to the police in Davenport, and they booked him on the charge specified in the arrest warrant and gave him the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The Davenport police then telephoned their counterparts in Des Moines to inform them that Williams had surrendered. McKnight, the lawyer, was still at the Des Moines police headquarters, and Williams conversed with McKnight on the telephone. In the presence of the Des Moines chief of police and a police detective named Leaming, McKnight advised Williams that Des Moines police officers would be driving to Davenport to pick him up, that the officers would not interrogate him or mistreat him, and that Williams was not to talk to the officers about Pamela Powers until after consult-

ing with McKnight upon his return to Des Moines. As a result of these conversations, it was agreed between McKnight and the Des Moines police officials that Detective Leaming and a fellow officer would drive to Davenport to pick up Williams, that they would bring him directly back to Des Moines, and that they would not question him during the trip.

In the meantime Williams was arraigned before a judge in Davenport on the outstanding arrest warrant. The judge advised him of his *Miranda* rights and committed him to jail. Before leaving the courtroom, Williams conferred with a lawyer named Kelly, who advised him not to make any statements until consulting with McKnight back in Des Moines.

Detective Leaming and his fellow officer arrived in Davenport about noon to pick up Williams and return him to Des Moines. Soon after their arrival they met with Williams and Kelly, who, they understood, was acting as Williams' lawyer. Detective Leaming repeated the *Miranda* warnings, and told Williams:

"[W]e both know that you're being represented here by Mr. Kelly and you're being represented by Mr. McKnight in Des Moines, and . . . I want you to remember this because we'll be visiting between here and Des Moines."

Williams then conferred again with Kelly alone, and after this conference Kelly reiterated to Detective Leaming that Williams was not to be questioned about the disappearance of Pamela Powers until after he had consulted with McKnight back in Des Moines. When Leaming expressed some reservations, Kelly firmly stated that the agreement with McKnight was to be carried out—that there was to be no interrogation of Williams during the automobile journey to Des Moines. Kelly was denied permission to ride in the police car back to Des Moines with Williams and the two officers.

The two detectives, with Williams in their charge, then set out on the 160-mile drive. At no time during the trip did Williams express a willingness to be interrogated in the absence of an attorney. Instead, he stated several times that "[w]hen I get to Des Moines and see Mr. McKnight, I am going to tell you the whole story." Detective Leaming knew that Williams was a former mental patient, and knew also that he was deeply religious.

The detective and his prisoner soon embarked on a wideranging conversation covering a variety of topics, including the subject of religion. Then, not long after leaving Davenport and reaching the interstate highway, Detective Leaming delivered what has been referred to in the briefs and oral arguments as the "Christian burial speech." Addressing Williams as "Reverend," the detective said:

"I want to give you something to think about while we're traveling down the road. . . . Number one, I want you to observe the weather conditions, it's raining, it's sleeting, it's freezing, driving is very treacherous, visibility is poor, it's going to be dark early this evening. They are predicting several inches of snow for tonight, and I feel that you yourself are the only person that knows where this little girl's body is, that you yourself have only been there once, and if you get a snow on top of it you yourself may be unable to find it. And, since we will be going right past the area on the way into Des Moines, I feel that we could stop and locate the body, that the parents of this little girl should be entitled to a Christian burial for the little girl who was snatched away from them on Christmas [E]ve and murdered. And I feel we should stop and locate it on the way in rather than waiting until morning and trying to come back out after a snow storm and possibly not being able to find it at all."

Williams asked Detective Leaming why he thought their route to Des Moines would be taking them past the girl's body, and Leaming responded that he knew the body was in the area of Mitchellville—a town they would be passing on the way to Des Moines.[1] Leaming then

stated: "I do not want you to answer me. I don't want to discuss it any further. Just think about it as we're riding down the road."

As the car approached Grinnell, a town approximately 100 miles west of Davenport, Williams asked whether the police had found the victim's shoes. When Detective Leaming replied that he was unsure, Williams directed the officers to a service station where he said he had left the shoes; a search for them proved unsuccessful. As they continued towards Des Moines, Williams asked whether the police had found the blanket, and directed the officers to a rest area where he said he had disposed of the blanket. Nothing was found. The car continued towards Des Moines, and as it approached Mitchellville, Williams said that he would show the officers where the body was. He then directed the police to the body of Pamela Powers.

---

[1] The fact of the matter, of course, was that Detective Leaming possessed no such knowledge.

At the first trial, Judge Denato denied petitioner's motion to suppress all evidence relating to or resulting from any statements petitioner made during the trip from Davenport to Des Moines on the ground that petitioner had waived his right to have an attorney present when he made the statements to Detective Leaming. *Id.* at 394, 97 S.Ct. at 1237. A bare majority of the Iowa Supreme Court justices agreed with Judge Denato. *State v. Williams, supra*, 182 N.W.2d 396. Judge Hanson of the United States District Court disagreed and

held that the incriminating statements were wrongfully admitted. He based his conclusion on three separate grounds: (1) denial of assistance of counsel; (2) denial of rights under *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (3) involuntariness of the statements. *Williams v. Brewer, supra.* The court of appeals affirmed, 2–1, on the basis of Judge Hanson's first and second grounds, but did not address the involuntariness ground. *Williams v. Brewer, supra.* The United States Supreme Court affirmed, 5–4, on the ground that petitioner was denied the assistance of counsel, but did not address the other two grounds. *Brewer v. Williams, supra.* All three federal courts found that petitioner had not waived his right to counsel.

On retrial, petitioner's counsel moved to suppress evidence of the discovery of the victim's body and other evidence resulting from that discovery on the ground that such evidence was fruit of the poisonous tree. After an evidentiary hearing, Judge Denato denied the motion based on his finding that searchers, who were systematically searching for the body, would have soon discovered it even if petitioner had not made the statements to Detective Leaming and had not led the police to the body, and the evidence was admitted at the trial.[2] The Iowa Supreme Court, on a de novo review of the evidence,[3] also found that the body would have been discovered anyway. *State v. Williams, supra*, 285 N.W.2d at 262.

Petitioner makes three specific contentions in respect to the state courts' inevita-

---

**2.** Of course, petitioner's statements to Detective Leaming and the fact that he led the police to the body were not placed in evidence. In a footnote to its opinion, the United States Supreme Court had stated:

> While neither Williams' incriminating statements themselves nor any testimony describing his having led the police to the victim's body can constitutionally be admitted into evidence, evidence of where the body was found and of its condition might well be admissible on the theory that the body would have been discovered in any event, even had incriminating statements not been elicited

from Williams. Cf. *Killough v. United States*, 119 U.S.App.D.C. 10, 336 F.2d 929. In the event that a retrial is instituted, it will be for the state courts in the first instance to determine whether particular items of evidence may be admitted.

*Brewer v. Williams*, 430 U.S. 387, 407 n.12, 97 S.Ct. 1232, 1243 n.12, 51 L.Ed.2d 423.

**3.** Whenever a constitutional challenge is presented to the Iowa Supreme Court, the court reviews the evidence de novo. *Armento v. Baughman*, 290 N.W.2d 11, 15 (Iowa 1980); *Watts v. State*, 257 N.W.2d 70, 71 (Iowa 1977).

ble discovery ruling: (1) the inevitable discovery doctrine applied by them is constitutionally deficient; (2) the burden of proof applied by them is constitutionally inadequate; and (3) the finding that the body would have been discovered in any event is not supported by the record.

### The Doctrine

The Iowa Supreme Court exhaustively treated the inevitable discovery doctrine issue. *Id.* at 255–62. The court noted that the constitutional propriety of the inevitable discovery doctrine exception to the exclusionary rule has not been considered by the United States Supreme Court. *Id.* at 256.[4] Noting the body of law from the lower federal courts and the courts of other states, *id.* at 256–58, the Iowa Supreme Court concluded that the doctrine was a "constitutionally sound exception to the rule of exclusion." *Id.* at 260. The inevitable discovery doctrine has not met with unanimous approval from the courts and commentators, *id.* at 257–58, although the body of law supporting the doctrine continues to develop.[5]

 It is this court's conclusion that the two-part test applied by the Iowa Supreme Court is not constitutionally deficient. The test requires the prosecution to show that (1) the police did not act in bad faith for the purpose of hastening discovery of the evidence in question, and (2) that the evidence would have been discovered by lawful means. *Id.* at 260. The second prong of the test requires proof of how the evidence would have been discovered. *Id.* at 258. The Iowa Supreme Court stressed that a "showing that discovery *might* have occurred is entirely inadequate" and that a "determination that a discovery would have come about must rest upon the record." *Id.* at 260.

Petitioner relies heavily on *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9

L.Ed.2d 441 (1963), as support for his contention that the Iowa courts committed constitutional error. The decision in *Wong Sun* rested on a finding that the challenged evidence would not have been found except for the constitutional violation. *Id.* at 487–88, 83 S.Ct. 417–18. Thus, *Wong Sun* does not foreclose the inevitable discovery doctrine as a constitutionally permissible exception to the exclusionary rule.

Petitioner also relies on *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). *Brown* dealt with the attenuation exception to the exclusionary rule which is analytically different from the inevitable discovery doctrine, and therefore is inapposite. *Wade* dealt with in-court identifications of the defendant by witnesses who had previously identified him at a lineup conducted without the presence of his counsel. The Supreme Court declined to bar any possible in-court identification by the witnesses who had participated in the lineup. Rather, the Court ruled that the government should first be afforded the opportunity to establish that the identifications "were based upon observations of the suspect other than the lineup identification." *United States v. Wade, supra*, 388 U.S. at 240, 87 S.Ct. at 1939. Thus *Wade* dealt with the independent origin exception to the exclusionary rule which is somewhat similar to the inevitable discovery rule. The articulated rule was necessary so as to not "render the right to counsel an empty one," *id.*, by crystallizing the witnesses' identification and effectively foreclosing any defense based upon misidentification. The inevitable discovery doctrine applied by the Iowa Supreme Court did not empty petitioner's right to counsel of its protection because the state had the burden of proving that the body would have been found anyway, and defendant's counsel could cross-examine the state's witnesses and present evidence on

---

4. But see footnote 2, *supra*.

5. Recent federal cases applying the doctrine include *United States v. Huberts*, 637 F.2d 630 (9th Cir. 1980); *United States v. Kandick*, 633

F.2d 1334 (9th Cir. 1980); *United States v. Bienvenue*, 632 F.2d 910 (1st Cir. 1980); *United States v. Brookins*, 614 F.2d 1037 (5th Cir. 1980) (limited rule).

behalf of defendant at the suppression hearing.

As the multitude of cases dealing with the exclusionary rule make clear, the purpose of the rule is to deter conduct in contravention of constitutional rights. *See Brown v. Illinois, supra*, 422 U.S. at 599–600, 95 S.Ct. at 2259–2260. The inevitable discovery doctrine articulated and applied by the Iowa Supreme Court does not frustrate the exclusionary rule's deterrence purpose because the test requires an absence of bad faith on the part of the police and proof that the police would have discovered the evidence in any event.

### The Burden of Proof Standard

■ The burden of proof standard applied by the Iowa courts was preponderance of the evidence. *State v. Williams, supra*, 285 N.W.2d at 260. Petitioner, relying on *United States v. Wade, supra*, asserts that the Constitution demands a clear and convincing standard. In *Wade* the Court stated that it would not require exclusion of courtroom identifications of the defendant, where pretrial lineups were conducted in the absence of the defendant's counsel, "without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *United States v. Wade, supra*, 388 U.S. at 240, 87 S.Ct. at 1939.

The Iowa Supreme Court relied in part upon the plurality decision in *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972) (voluntariness of confession hearing) and the majority opinion in *United States v. Matlock*, 415 U.S. 164, 177–78 n.14, 94 S.Ct. 988, 996–97 n.14, 39 L.Ed.2d 242 (1974) (generalized statement regarding burden of proof at suppression hearings).

Petitioner argues that the Sixth Amendment right to counsel requires a higher burden of proof than that applied at suppression hearings arising out of alleged Fourth Amendment violations. The basis of this argument is that the exclusionary rule invoked in Fourth Amendment cases is a judicially created remedy to enforce that constitutional right whereas the Sixth Amendment exclusionary rule is an essential element of the constitutional right. Such is also true of the Fifth Amendment right of a criminal defendant to not be compelled to testify against himself. "In that sense, the exclusion of involuntary confessions derives from the [Fifth] Amendment itself. *United States v. Janis*, 428 U.S. 433, 443, 96 S.Ct. 3021, 3026, 49 L.Ed.2d 1046 (1976)." *United States v. Raddatz*, 447 U.S. 667, 678 n.4, 100 S.Ct. 2406, 2413 n.4, 65 L.Ed.2d 424 (1980). *Lego* upheld the preponderance of the evidence standard at suppression hearings to determine the voluntariness of confessions.

The Iowa Supreme Court was correct in applying the preponderance of the evidence standard rather than requiring proof by clear and convincing evidence. *Cf. United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) (Sixth Amendment rights protected by remedies similar to remedies invoked for violation of other constitutional rights).

### Evidence to Support Finding

Petitioner argues that the evidence introduced at the suppression hearing was not sufficient to support the state's burden of proof. The evidence before the state courts is well summarized in *State v. Williams, supra*, 285 N.W.2d at 260–62, and need not be reiterated here.

The Iowa Supreme Court's finding is a factual finding which this court may review only within the limits of 28 U.S.C. § 2254(d). *See Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) (discussing *Taylor v. Lombard*, 606 F.2d 371, 375 (2d Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781 (1980)). Under section 2254(d), the court's finding is presumed to be correct—indeed, this presumption of correctness is mandated by the statute. *See Sumner v. Mata, supra*, 101 S.Ct. at 769. Only if one of the exceptions enumerated in section 2254(d) is established is this presumption overcome.

A review of the evidence before the state courts leads this court to conclude that the evidence was sufficient to permit the finding that the state had proved by a preponderance of the evidence that the body would have been discovered by the searchers in any event. Nothing in the state court record establishes any of the exceptions enumerated in section 2254(d).

However, petitioner contends that additional evidence relating to the body and the search introduced in this court at the habeas corpus hearing, referred to in petitioner's post-hearing memorandum and referred to hereinafter as newly discovered evidence, establishes that the material facts were not adequately developed at the suppression hearing and that the suppression hearing was not full, fair and adequate. 28 U.S.C. § 2254(d), exceptions 3 and 6. Petitioner further contends that the whole evidentiary record, as expanded by the newly discovered evidence, cannot support a finding of inevitable discovery of the body.

Perhaps the newly discovered evidence should not even be considered in this habeas corpus proceeding for lack of exhaustion of state remedies. Petitioner has not sought state post-conviction relief on the grounds of newly discovered evidence under Iowa Code Chapter 663A. However, the exhaustion doctrine, codified in 28 U.S.C. § 2254(b) and (c), is based on principles of comity rather than jurisdiction. *Cage v. Auger*, 514 F.2d 1231, 1232–33 (8th Cir. 1975). Under all the circumstances it would appear to be unnecessarily burdensome on the parties and the state and federal courts to require this inevitable discovery issue to be relitigated in the Iowa courts and then relitigated in the federal courts. The newly discovered evidence will be considered in this proceeding. *See Austin v. Swenson*, 522 F.2d 168, 170 (8th Cir. 1975); *Losieau v. Sigler*, 421 F.2d 825, 828 (8th Cir. 1970).

I doubt that the newly discovered evidence[6] is of sufficient import to demonstrate that the material facts were not adequately developed in the suppression hearing or that petitioner did not receive a full, fair and adequate suppression hearing. However, that question need not be decided because it is this court's independent finding and conclusion, based on a preponderance of all the evidence including the newly discovered evidence, that Pamela Powers' body would soon have been found by the searchers in essentially the same condition it was in at the time of the actual discovery, even if petitioner had not made any statements and had not led the police to the body. The body was right next to the end of a culvert located beneath a road. Much of the body was covered with snow, but her face and part of her brightly colored striped shirt were not touched by snow and were completely exposed to the view of any person looking at the end of the culvert. The searchers were going into the ditches to look into all culverts, and they would have searched along the road where the culvert and body were located.

The state has fulfilled its burden of proving inevitable discovery of the body.

## DENIAL OF REQUEST FOR OUT–OF–STATE COUNSEL

Petitioner alleges that Judge Denato's denial of his application for appointment of a California lawyer denied him his right to counsel under the Sixth and Fourteenth Amendments, and due process of law and equal protection of the law under the Fourteenth Amendment. In his application for appointment of counsel, petitioner requested that a California lawyer who is licensed to practice in California and Michigan, but not in Iowa, and an Iowa lawyer be appointed to represent him. The requested Iowa lawyer and two other Iowa lawyers were appointed to represent petitioner, but the California lawyer was not appointed.

Petitioner concedes that the right to counsel protected by the Sixth Amendment

6. The newly discovered evidence consists of previously overlooked photographs of the body at the site of its discovery and recent deposition testimony of the investigative officer in charge of the search. This newly discovered evidence neither adds much to nor subtracts much from the suppression hearing evidence.

does not include an absolute right to choose appointed counsel. He argues, however, that because an indigent defendant has the right to demand appointed counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and also has the right to choose to represent himself, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), he therefore has the right to have a specific attorney (here, the California attorney) appointed to represent him absent a substantial countervailing state interest. Petitioner has supplied no authority directly in support of his proposition and the court has found none.

■ There is no merit in plaintiff's position. This court fully concurs in the thorough and sound disposition of this issue made by the Iowa Supreme Court. *State v. Williams, supra*, 285 N.W.2d at 253–55. Petitioner was constitutionally entitled to the assistance of effective counsel, and he got that. But he had no constitutional right, absolute or qualified, to appointment of an out-of-state lawyer of his own choosing.

### DENIAL OF REQUEST FOR OPINION POLL

On petitioner's motion, the trial was transferred from Polk County to Linn County, a county selected by petitioner and his counsel.

■ Petitioner argues that he was denied effective assistance of counsel, due process and equal protection of the law because Judge Denato denied his request for funds to conduct public opinion polls in five Iowa counties other than Polk County for the purpose of selecting a transferee county.

These constitutional claims are without merit. They were adequately disposed of by the Iowa Supreme Court, *id.* at 266, and need not be further discussed.

### DENIAL OF JUROR CHALLENGE

Petitioner contends that he was denied due process when the trial court denied his challenge for cause of a prospective juror. The prospective juror was eventually removed by petitioner using one of his peremptory challenges. *Id.* at 267. The Iowa Supreme Court held that the denial was not subject to review on appeal because the challenge was not sufficiently specific as required by state law, but went on to express doubt that the contention had merit. *Id.*

A preliminary issue raised by respondent is the applicability of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), which holds that failure to comply with a state's contemporaneous objection rule, absent cause and actual prejudice, precludes habeas corpus review of matters to which objection was not lodged. *Id.* at 87, 97 S.Ct. at 2506; *Parton v. Wyrick*, 614 F.2d 154, 157 (8th Cir.), *cert. denied*, 449 U.S. 846, 101 S.Ct. 131, 66 L.Ed.2d 56 (1980). *Wainwright* may not control because an objection, albeit an inadequate one, was made. In any event, the issue will be disposed of on its merits.

■ A review of the voir dire examination of the prospective juror leads to the conclusion that petitioner is not entitled to relief. The transcript does not reveal any abuse of the discretion placed in the hands of Iowa trial court judges to rule on challenges for cause. *See State v. Winfrey*, 221 N.W.2d 269, 273 (Iowa 1974). The denial of the challenge did not violate petitioner's right to due process of law.

### SUFFICIENCY OF EVIDENCE—JACKSON v. VIRGINIA

Petitioner's next due process ground for relief is his claim that the trial court erroneously denied his motion for a directed verdict on the charge of premeditated first degree murder. In a strict sense petitioner's asserted ground for relief goes only to the sufficiency of the evidence to submit the charge to the jury. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), involved the separate question of whether the evidence was sufficient to uphold a finding of guilty that had been made. However, the standard announced in *Jackson v. Virginia* is the logical one to apply.

Habeas corpus relief must issue if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia, supra*, 443 U.S. at 324, 99 S.Ct. at 2792. The review of the record is made in "the light most favorable to the prosecution." *Id.*

■ Applying the standard of *Jackson v. Virginia, supra*, the evidence was sufficient for a rational trier of fact to find proof of the elements of deliberation and premeditation beyond a reasonable doubt. *See State v. Williams, supra*, 285 N.W.2d at 267–68.

### INDICTMENT—SUBMISSION VARIANCE

Petitioner asserts as due process grounds for relief an alleged variance between the grand jury indictment and one of the theories of guilt submitted to the jury. The indictment accused him "of the crime of murder as defined in Sections 690.1 and 690.2 of the 1966 Code of Iowa [in] that [defendant] ... did with malice aforethought, premeditation, deliberation and intent to kill, murder Pamela Powers in Polk County, Iowa." Instruction No. 8 submitted to the jury as an alternative to premeditated murder a felony murder theory—that petitioner murdered Pamela Powers in the perpetration of an attempted rape.[7] The gist of petitioner's argument is that submission of Instruction No. 8 to the jury violated his due process right to be tried only on the offense charged in the indictment.

■ Iowa case law provides that when the state chooses to specify the manner in which a crime was committed, a defendant cannot "properly be convicted upon a finding it was committed by means not alleged." *State v. Hochmuth*, 256 Iowa 442, 127 N.W.2d 658, 659 (1964). *See also State v. Allen*, 293 N.W.2d 16, 22 (Iowa 1980); *State v. Black*, 282 N.W.2d 733, 734 (Iowa 1979); *State v. Bakker*, 262 N.W.2d 538, 542

(Iowa 1978). Petitioner's counsel, however, did not challenge the jury instruction on the grounds of variance. The challenge could have been raised in a motion for a new trial unless it had been expressly waived. *State v. Williams, supra*, 285 N.W.2d at 268. The Iowa Supreme Court held that the claimed error in the jury instruction was expressly waived by petitioner's counsel. *Id.* at 268–69. Respondent argues that petitioner is not entitled to have this court review the merits of the claim unless cause and prejudice have been established. *Wainwright v. Sykes, supra; Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).

■ In *Collins v. Auger*, 577 F.2d 1107 (8th Cir. 1978), the United States Court of Appeals for the Eighth Circuit seemingly approved the following definition of cause: "[L]ack of knowledge of the facts or law would be sufficient cause for failure to make the proper objection * * *." *Id.* at 1110 n.2. Two of petitioner's trial counsel have submitted affidavits to show that under the *Collins* standard there is cause, based on their lack of knowledge of the law, for failing to object to the jury instruction. The two affidavits may be sufficient to establish cause for failing to object. In addition, trial counsel state in their affidavits that they did not consider or discuss the possibility of a Fourteenth Amendment due process objection. On the basis of *Collins*, petitioner has shown cause for failure to object to Instruction No. 8 on the grounds of variance.

The prejudice prong of *Wainwright v. Sykes* inheres in the merits of petitioner's contention. The court will dispose of the issue on the merits.

Initially it should be noted that petitioner has not shown that the felony murder theory or the evidence in support of its prejudiced his defense or came as a surprise. *Ridgeway v. Hutto*, 474 F.2d 22 (8th Cir.

---

7. The 1966 Iowa Code § 690.2 provided:

All murder which is perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem, or burglary, is murder in the first degree * * *.

1973) (challenge to variance on Sixth Amendment grounds). Indeed, although neither party brought it to my attention, the state court record before this court discloses that the felony murder theory was also submitted to the jury in petitioner's first trial in 1969. (Instruction No. 6 of Statement and Instructions filed May 6, 1969.) Thus, petitioner and his counsel were fully aware that the theory would no doubt be submitted again in the retrial.

It should also be noted that the Iowa case law, cited *supra*, to the effect that a defendant cannot be properly convicted upon a finding that he committed the crime by means other than the means specifically alleged, is not placed on constitutional grounds.

The essence of petitioner's claim is that he was tried and convicted of a charge of which he was not indicted. Cases dealing with the Fifth Amendment guarantee against being held to answer for a federal felony "unless on a presentment or indictment of a Grand Jury" are inapposite because that constitutional provision does not apply to the states through the Fourteenth Amendment. *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 292, 28 L.Ed. 232 (1884). Cases holding that a conviction for violating a code section not charged in the indictment violates due process are also inapposite because the indictment charged a violation of "Code sections 690.1 and 690.2," and murder committed in the attempt to perpetrate a rape is included in section 690.2. *See* footnote 7, *supra.* Furthermore, the minutes of grand jury evidence attached to the indictment, particularly the minutes of Dr. Leo Luka's testimony, showed that the state would produce evidence supporting the felo-ny murder theory. The fact that the felony murder theory was tried and submitted at the first trial has been previously noted.

In *Watson v. Jago*, 558 F.2d 330 (6th Cir. 1977), the court held that where a criminal defendant was forced to defend against felony-murder although charged only with deliberate and premeditated first degree murder, the resulting conviction was a denial of due process under the Fourteenth Amendment. However, in that case Ohio law made it clear that premeditated murder and felony-murder were two separate offenses. *Id.* at 334–35. Under Iowa law there is but one offense of murder. *State v. Conner*, 241 N.W.2d 447, 460 (Iowa 1976). Thus, petitioner was not tried and convicted of a crime for which he was not indicted. *Cf. Conner v. Auger*, 595 F.2d 407, 410–11 (8th Cir. 1979).

■ Submission of the felony murder theory did not deprive petitioner of due process of law. Felony murder was within the indictment and petitioner and his counsel had full and fair notice of the charges against him and of the fact that the felony murder theory would be submitted.[8]

## POSSIBLE LACK OF UNANIMITY ON THEORY

Petitioner's final contention is that the court's instructions permitted the jury to return a verdict of guilty without reaching a unanimous conclusion that petitioner committed either premeditated murder or felony murder. This contention was also not made to the trial court and the Iowa Supreme Court held that the issue could not be asserted for the first time on appeal. *State v. Williams, supra*, 285 N.W.2d at 269. Respondent argues that the procedural

---

**8.** The Iowa Supreme Court's decision affirming petitioner's first conviction and the subsequent federal habeas corpus decisions disclose that petitioner did not then complain about submission at the first trial of the felony murder theory. Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a petition "shall specify all the grounds for relief which are available to the petitioner and of which he has * * * knowledge." Although the quoted rule may not apply because the first conviction was set aside on other grounds and it is a new conviction that is now under review, it is my opinion that petitioner's failure to assert this ground in his first habeas corpus proceeding ought to bar him from now doing so. Had he asserted the ground after the first conviction, the issue might have then been resolved by the reviewing courts for the guidance of the parties and the trial court in the second trial. Piecemeal post-conviction litigation is a plague on our system of criminal justice.

waiver imposed by the Iowa Supreme Court precludes petitioner from raising the issue here. *Wainwright v. Sykes, supra.*

Under *Collins v. Auger, supra,* petitioner has established cause for failure to raise the issue before the trial court. Whether prejudice has been established need not be decided because that determination is entwined with the merits of petitioner's claim. If Instruction No. 8 permitted a non-unanimous decision by the jury and unanimity was required by due process, then prejudice would necessarily follow. The merits will be reached.

◼ The essence of petitioner's argument is that he was entitled to have the jurors instructed that they must, before finding defendant guilty, unanimously agree on the means of the murder—either (1) with premeditation, deliberation and with a specific intent to kill or (2) in attempting to perpetrate a rape. No such instruction was requested by petitioner or his counsel.

Cases dealing with the requirement of unanimity urged by petitioner are few. Generally, " 'it is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict.' " *United States v. Murray,* 618 F.2d 892, 898 (2d Cir. 1980), *quoting from United States v. Natelli,* 527 F.2d 311, 325 (2d Cir. 1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976). *See also United States v. Pavloski,* 574 F.2d 933, 936 (7th Cir. 1978). Such a general instruction was given at petitioner's trial. There was no instruction given at petitioner's trial that expressly permitted a verdict based on different findings by individual jurors, as was the case in *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977).

Based on the foregoing as well as on reasons articulated by the Iowa Supreme Court in its reflections on the same claim,

*State v. Williams, supra,* 285 N.W.2d at 269–70, it is this court's conclusion that no constitutional error appears.[9]

## ORDER DENYING WRIT

Petitioner has failed to demonstrate that his conviction is tainted by any violation of his federal constitutional rights. Accordingly, his petition for a writ of habeas corpus is denied.

---

9. The unanimity instruction that petitioner claims should have been given to the jury was not given in the first trial either. He did not raise the issue in the appeal or in the habeas corpus proceedings challenging his first conviction. Therefore, the comments in footnote 8, *supra,* are equally applicable to this issue.