STATE of Iowa, Plaintiff-Appellee,

v.

Bruce Allen HATTER,
Defendant-Appellant.

No. 84–1298.

Court of Appeals of Iowa.

Nov. 26, 1985.

Mark C. Meyer of Kinnamon, Kinnamon, Russo & Meyer, Iowa City, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Joseph P. Weeg, Asst. Atty. Gen., and Harold Denton, Asst. Linn Co. Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., SCHLEGEL, and HAYDEN, JJ.

SCHLEGEL, Judge.

Defendant appeals his conviction of first degree kidnapping and sexual abuse. On appeal, he raises six issues the trial court erred in: (1) refusing to remove for cause, two jurors, one of whom was a rape victim; (2) refusing to prevent the State from impeaching the defendant with illegally obtained evidence, should defendant elect to testify at trial and deny the elements of the crime charged against him; (3) Iowa Code sections 710.1 and .2 are unconstitutionally vague on their face and as applied; (4) Iowa's sentence for first degree kidnapping violates the eighth amendment's prohibition against cruel and unusual punishment; (5) refusing to instruct the jury on the penalties upon conviction of the offense charged and of the lesser included offenses; and (6) in failing to include, in the marshalling instruction, the issue of whether the confinement or removal was "incidental" to the sexual abuse. We reverse on the first issue and affirm the remaining issues.

This is defendant's second trial on the basic underlying facts. The first conviction for the same offense was reversed on appeal for reasons not essential to this appeal in *State v. Hatter*, 342 N.W.2d 851 (Iowa 1983).

In the second trial, the victim testified, in essence, that on December 1, 1981, defendant forced her into her car at knifepoint and then drove her to a secluded rural area where he forced her to perform oral sex. She testified also that she recognized the defendant from a high school they both attended. Defendant then allowed the victim to drive back to his car, he got out and she returned to her home. Upon arriving home she told her father what happened. Her father then called the police, who on April 1, 1982, arrested the defendant for the kidnapping and sexual abuse of not only the victim herein, but also on the same charges allegedly perpetrated on another victim on March 31, 1982.

I. *Challenges for Cause.* Defendant alleges that the trial court erred in refusing to disqualify two jurors for cause, forcing him to use his peremptory strikes instead. One juror was a woman who stated that she had very serious reservations about her ability to act fairly and impartially due to the nature of the offense. She eventually relented, after questioning from the State, and indicated that she thought she could return a verdict based upon the evidence presented and instructions given by the court. The second juror was a rape victim. After her initial indication that she did not think she could render a fair and impartial verdict, she also succumbed to the prosecution's inquiries and eventually stated that she, too, could try to render a fair and impartial decision.

■ Defendant moved to have the trial court excuse the above jurors for cause. He based his motion upon the views each juror had initially expressed, and also upon the sixth and fourteenth amendments of the United States Constitution, Article I, Section 6 and 10 of the Iowa Constitution, and on grounds of fundamental fairness. We agree with defendant that the juror who had been a rape victim should have been excused for cause.

In *State v. Williams*, 285 N.W.2d 248, 267 (Iowa 1979), we said:

Three principles govern our review of such questions. First, trial court is vested with broad, but not unlimited, discretion in ruling upon a challenge for cause. *State v. Winfrey*, 221 N.W.2d 269, 273 (Iowa 1974); *State v. Beckwith*, 242 Iowa 228, 232, 46 N.W.2d 20, 23 (1951); Dunahoo, *The Scope of Judicial Discretion in the Iowa Criminal Law Procedure*, 58 Iowa L.Rev. 1023, 1064–65 (1973). Second, a determination of a prospective juror's qualifications must rest upon the entire record of the examination. *See State v. Beckwith*, 242 Iowa at 238, 46

N.W.2d at 26. Third, the trial court sits as judge of the facts on the question of existence of a ground for challenge. *Tobin, Tobin & Tobin v. Budd*, 217 Iowa 904, 919, 251 N.W. 720, 727 (1934).

As noted in the first principle, the trial court is vested with the discretion of whether or not to excuse a juror for cause. *Winfrey*, at 273. However, the supreme court in *Beckwith* said, "that trial courts should use the utmost caution in overruling challenges for cause in criminal cases when there appears to be a fair question as to their soundness." *Beckwith*, 46 N.W.2d at 26.

Although a ruling may be technically right, if it must be so doubtful as to raise a fair question as to its correctness, it is far better to give the accused the benefit of the doubt, to the end that he and all other men may be satisfied that his rights have not been invaded. Confidence in the fairness and impartiality of each member of a jury, which shall be sworn to try a man on a charge involving his life or liberty, is of the greatest importance to the welfare of the state. Indeed, it is of such paramount importance to every citizen that the time and expense necessary to secure jurors as to whom no doubt may rightly exist is an insignificant consideration.

*Id.*

■ The Iowa Rules of Criminal Procedure provide a list of factual circumstances which constitute a basis for which the trial court may sustain a challenge for cause. *See* Iowa R.Crim.P. 17.5(a)–(p). While the rules say that "a challenge for cause may be made" in one of the listed circumstances, the courts have consistently adhered to sustaining these challenges as a matter of course. *See State v. Kuster*, 353 N.W.2d 428, 433 (Iowa 1984). Iowa Rule of Criminal Procedure 17.5(m) states that a challenge for cause may be made against a juror who, "... is a defendant in a similar indictment, or complainant against the defendant or any other person indicted for a similar offense." In this case, the record is unclear whether or not the juror who was

rape victim who had filed a complaint against another person. However, the similarities between the juror qualifications for challenges for cause in rule 17.5(m), and the juror who was a rape victim here are striking. They are so similar, in fact, that it can be said that it falls into the situation admonished by the *Beckwith* court where it is so doubtful "as to raise a fair question as to its correctness." 242 Iowa at 238–39, 46 N.W.2d at 26. Prejudice will be presumed when, as here, the defendant uses all of his peremptory challenges and uses one to remove the challenged juror. 242 Iowa at 232, 46 N.W.2d at 23. *See also State v. Williams*, 285 N.W.2d 248, 267 (Iowa 1979).

While the record is not verbatim, it is significant to note that the defense counsel, prosecutor, and trial court collaborated to make the record based on the testimony of the witnesses immediately after the conclusion of voir dire and all of the parties agreed it was complete and accurate. More importantly, however, because we base our holding on the background of the juror rather than what she specifically did or did not say, the completeness of the record is not decisive here.

■ II. *Impeachment with Illegally Obtained Evidence.* Defendant argues that the trial court erred when it ruled that the State would be allowed to use illegally obtained evidence for impeachment purposes should he decide to take the stand and deny the specific elements of the charges against him. He maintains that language in *Walder v. United States*, 237 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), supports his contention that the illegally obtained evidence cannot be used for impeachment purposes. *Walder* does state, in part, "He must be free to deny all the elements of the case against him without thereby giving leave to the government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief." 347 U.S. at 65, 745 Ct. at 356, 98 L.Ed. at 507. However, later U.S. Supreme Court authority has refuted the *Walder* language and has

consistently held that illegally obtained evidence may be used to impeach a defendant should the defendant take the stand and deny the specific elements of the crime, or any knowledge or involvement with related matters. *See United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The Iowa Supreme Court has had occasion to follow *Harris, Hass,* and *Havens* in recent decisions. *See State v. Donelson*, 302 N.W.2d 125 (Iowa 1981); *State v. Campbell*, 294 N.W.2d 803 (Iowa 1980); *State v. Washington*, 257 N.W.2d 890 (Iowa 1977). In *State v. Campbell*, 294 N.W.2d 803, 805 (Iowa 1980), the Iowa Supreme Court adopted the impeachment exception to the exclusionary rule when it stated "... unlawfully obtained evidence ruled inadmissible against a defendant in the prosecution's case in chief may nonetheless be used to impeach the defendant's assertions made upon direct examination."

In the present case, the police arrested defendant in his home without a search warrant or arrest warrant. Subsequent to his arrest, defendant was given his *Miranda* rights. Thereafter, he made oral inculpatory statements, signed a written confession, and relinquished a set of handcuffs with a key to police. The physical evidence, the statements, and the confessions obtained from this arrest were suppressed and held inadmissible for the State's case in chief in *State v. Hatter*, 342 N.W.2d 851, 853–57 (Iowa 1983).

Defendant argues that the precedental value of *Harris* has been diminished by the recent U.S. Supreme Court case of *Oregon v. Elstad*, —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222. Defendant asserts that the *Elstad* decision established a clear cut difference between illegal evidence obtained by fourth amendment, search and seizure violations, and fifth amendment, *Miranda* violations. He gleans from *Elstad* the principle that there is no reason to apply the exclusionary rule to evidence obtained in violation of *Miranda* rights as broadly as it is applied to similar evidence obtained in violation of the fourth amendment, as were the statements in the case at bar. Reasoning therefore that this language mandates a broad application of the "fruit of the poisonous tree doctrine," defendant concludes that the precedental value of *Harris* and its progeny is negated.

We are not willing to read the *Elstad* decision as broadly as the defendant is. We find no language in *Elstad* that would negate the language of the *Harris* court when it said:

It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment.

"[T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." 401 U.S. at 224, [91 S.Ct. at 645] 28 L.Ed.2d at 4.

The impeachment process here undoubtedly provided valuable aid to the jury in assessing petitioner's credibility, and the benefits of this process should not be lost, in our view, because of the speculative possibility that impermissible police conduct will be encouraged thereby. Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.

Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. *See United States v. Knox*, 396 U.S. 77, 24 L.Ed.2d 275, 90 S.Ct. 363 (1969); *cf. Dennis v. United States*, 384 U.S. 855, 16 L.Ed.2d 973, 86 S.Ct. 1840

(1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process.

Id., 401 U.S. at 225, 91 S.Ct. at 645, 28 L.Ed.2d at 4.

We hold, therefore, that the trial court did not err in ruling that the prosecution would be able to impeach defendant's credibility with previously inadmissible evidence should defendant choose to testify and deny the elements of the crime charged against him.

■ III. *Vagueness of Iowa Code Sections 710.1–2(1981).* Defendant's contention that the Iowa Code sections 710.1–2 (1981) are unconstitutionally vague on their face and as applied is without merit. The Iowa Supreme Court has previously dealt with this specific issue in *State v. Hatter*, 342 N.W.2d 851, 857 (Iowa 1983). That court stated:

> We have most recently rejected this argument in *State v. Newman*, 326 N.W.2d 788, 792 (Iowa 1982), where we said:
>
>> Even if we accept defendant's argument—which we do not do—that the statute does not give a person of ordinary intelligence fair notice of what is prohibited, defendant's argument ignores the guidelines established by [*State v. Rich*, 305 N.W.2d 739 (Iowa 1981)] and cases following the *Rich* rationale. They provide the specificity necessary to meet constitutional standards.

We feel that this issue has conclusively been decided against defendant's contentions and therefore hold that his argument here is without merit.

■ IV. *Life Imprisonment Sentence.* Defendant argues that his sentence of life in prison without parole for kidnapping in the first degree violates the eighth amendment's prohibition against cruel and unusual punishment. Specifically, he argues that his sentence is disproportionate for two reasons: (1) his sentence of life without parole violates the requirements of *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); and (2) his sentence is excessive because "it serves no acceptable social purpose." We are not persuaded by either argument.

In *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court declared that a life sentence without possibility of parole for the conviction of being a habitual offender was not proportionate to the crime and the facts of the case, and therefore was unconstitutional. The Iowa Supreme Court has adopted the three factors established in *Helm* used to ascertain the proportionality of the sentence, and has utilized them for standards when similar challenges have arisen to sentences for certain crimes. Two decisions in particular have analyzed Iowa's first degree kidnapping statute in light of the *Helms* criteria and have upheld the statutory sentence of life imprisonment. *See Lamphere v. State*, 348 N.W.2d 212 (1984); and, *State v. Nims*, 357 N.W.2d 608 (Iowa 1984). We hold that *Lamphere* is dispositive of this issue now on appeal before us. The *Lamphere* court found, in applying the *Helms* factors, that:

> (1) [T]he crime of First Degree Kidnapping is one of "utmost severity" because of the potential for additional harm to a rape victim; (2) the sentence for one who kidnaps and sexually abuses a victim is not disproportionate to other sentences in Iowa because both the kidnapping and the sexual abuse are actually "two serious, life-threatening crimes instead of only one;" and (3) Iowa is not alone in imposing life imprisonment without parole for those who kidnap with the intent to subject their victims to sexual abuse.

*See Lamphere*, 348 N.W.2d at 220–21.

As we stated before, the Iowa Supreme Court in *Nims* reaffirmed its holding that the mandatory life sentence for first degree kidnapping is constitutional. *See Nims*, 357 N.W.2d at 611.

In this case defendant was found guilty of first degree kidnapping and sexual abuse at least as severe and grave as the

offenses in *Nims* and *Lamphere*. Therefore, we need not repeat the exhaustive reasoning used in both of these decisions. Accordingly, we hold that defendant's contention that Iowa Code sections 710.1 and 710.2 are unconstitutional, on their face and as applied, is without merit.

■ *V. Instructions on Penalty and Lesser Included Offense.* Defendant alleges that the trial court should have instructed the jury as to the penalty of the charged offense and the lesser included offenses based on the following arguments: (1) Knowledge of the penalty would assist the jurors in determining whether a victim was "sufficiently confined" or "substantially endangered" to be guilty of kidnapping; (2) Knowledge of the penalty would assist the jurors in determining the degree of certainty necessary to find guilty "beyond a reasonable doubt;" (3) Knowledge of the penalty would prevent jurors from guessing, perhaps incorrectly, at the proper penalty; (4) Knowledge of the penalty is harmless in any case because the jurors already intuitively know the correct penalty; (5) The jury instruction stating that the trial court "fixes" the penalty misguides the jury; and (6) Since a trial court already knows the penalty, denial of this knowledge to the jurors results in dissimilar treatment to those who have a jury trial and those who have a trial to the court.

In response to these arguments, it must first be noted that the Iowa Supreme Court, and the majority of state and federal jurisdictions, hold that trial courts should not instruct jurors of the applicable penalties. *See State v. Loucks,* 218 Iowa 714, 253 N.W. 838, 841 (1934), an cases cited therein; Bartels, *Punishment and the Burden of Proof,* 66 Iowa L.Rev. 899, 910–911 (1981).

The United States Supreme Court has stated that a trial has one purpose—to seek the truth. *See United States v. Havens,* 446 U.S. 620, 626–27, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559, 565–66 (1980). Penalties have nothing to do with the factual determination that a defendant did or did not commit a crime. As the Iowa Supreme Court has found: "The jury has no concern with the punishment which the law prescribes. Its function is to determine the fact question as to whether the defendant is guilty or not guilty." *State v. Purcell,* 195 Iowa 272, 191 N.W. 849, 950 (1923).

Knowledge of the penalty is wholly irrelevant to the jury's unique part of the judicial system, that being a fact-finder for two opposing parties. It is the legislature, not the jurors, that determine the penalty appropriate for the crime. The jurors finding of guilty only satisfies the criteria for implementing the legislatively determined penalty. Knowledge of the penalty will not assist in determining the facts pertaining to the "beyond a reasonable doubt" standard or in determining what is meant by "confined" or "substantially endangered." On the contrary, knowledge of the penalty would only serve to confuse and distract the jury from its unique and important judicial function. We hold therefore that the trial court did not err in refusing to instruct the jury as to the penalty of the charged offense and the lesser included offenses.

■ *VI. Marshalling Instructions.* One of defendant's contentions at trial and on appeal, is that the alleged kidnapping was merely incidental to the sexual abuse and therefore the defendant should not be convicted of kidnapping. The trial court, however, provided a separate instruction that defined "confines and removes" in accordance with the directions in *State v. Rich,* 305 N.W.2d 739 (Iowa 1981). The Iowa Supreme Court dealt with this same issue in *State v. Hatter,* 342 N.W.2d 851, 858 (Iowa 1983), where it said:

In addition, we find no error in trial court's marshalling instruction because all of the elements of first-degree kidnapping were included in it. A separate instruction immediately following the marshalling instruction was inserted to more clearly define the elements in accordance with *State v. Rich,* 305 N.W.2d 739 (Iowa 1981). We have held that it is not necessary to define the elements of

an offense within the marshalling instruction.

Once again, an issue already decided against defendant is controlling for this issue on appeal. Defendant's argument on this issue is therefore without merit.

We affirm the trial court on the issues II through VI. However, because we hold that the trial court abused its discretion by refusing to excuse the juror for cause, we reverse on the first issue and remand the case for new trial.

**REVERSED AND REMANDED.**