Betty L. HALL, Appellee,

v.

IOWA MERIT EMPLOYMENT COMMISSION, Appellant.

No. 85–505.

Supreme Court of Iowa.

Jan. 15, 1986.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Lynden Lyman, Asst. Atty. Gen., for appellant.

Thomas M. Wertz and Mary K. Hoefer, of Tom Riley Law Firm, P.C., Cedar Rapids, for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, CARTER and WOLLE, JJ.

McGIVERIN, Justice.

The Iowa Merit Employment Commission (commission) appeals from a decision of the district court which reversed a commission ruling. The commission's ruling had affirmed the action of the Department of Human Services (DHS) in demoting and transferring its employee, petitioner Betty Hall, after her entry of a guilty plea to a criminal charge of mechanical and electronic eavesdropping, three months after she had been suspended for misuse and abuse of state telephones in connection with the same incident. The district court on judicial review reversed and ordered Hall reinstated to her former position. We affirm the decision of the district court.

The issues which we consider are: 1) whether petitioner's plea of guilty to the criminal charge of electronic eavesdropping constituted a second separate act of misconduct in addition to her misuse and abuse of state telephones; and 2) whether the department was precluded from taking fur-

ther action against Hall after the initial disciplinary action became final.

The facts giving rise to this appeal are largely undisputed. Petitioner Betty Hall has been employed with DHS since 1971. At the time of her demotion in 1983, she was an office supervisor in the Linn County office of DHS.

During the fall of 1982, all three of the Linn County DHS offices were moved into one building. As a part of this relocation, a new telephone system was installed by the Teleconnect Company. The system was equipped with what company representatives called an "executive override," which made it possible for both incoming and outgoing calls on agency phones to be listened to without the knowledge of the parties to the conversation. The Teleconnect system, including the monitoring capacity, was recommended by Loren Jansa, director of DHS' Linn County office and Hall's immediate superior, to the Linn County Board of Supervisors. The Board approved the installation of the Teleconnect system.

There were two purposes for the "executive override" feature. First, the monitoring capacity was viewed as a training tool for employees who were responsible for answering telephone calls coming into the agency. These employees could be monitored by a supervisor in order to discover and to correct impoliteness and other deficiencies in dissemination of information. It was hoped this would decrease the number of unnecessary incoming calls, because the agency's new phone system had considerably fewer lines than previously existed under the old system. The second purpose for the "executive override" was to insure that the agency's phone system was not being misused by employees making personal local and long-distance calls during working time and, in addition, tying up the already limited number of phone lines available for agency use.

Jansa decided the "executive override" device would be installed on Hall's phone.

When the new telephone system became operational, sessions were held for various groups of agency employees to train them on how to properly use the system. It is unclear from the record whether Teleconnect personnel told all employees during the training sessions about the monitoring capacity on the agency telephones. However, sometime after the new system was installed, Hall signed a statement, provided to her by Teleconnect, stating that she had advised her staff of the "executive override" feature, although Hall had not actually done so. There was no separate action taken by anyone within DHS to insure that employees were aware of the system's monitoring capabilities.

Hall used the "executive override" feature for training purposes and to document misuse of the agency phone system for non-work purposes. Jansa was aware of her actions. He also knew that another supervisor, Mickey Coonfare, was using the "executive override." He told Hall and Coonfare to be discreet in their monitoring activities and also asked them to make a written log to confirm incidents of misuse of the telephone system by agency employees.

In the spring of 1983, Hall became concerned about several members of the support staff she believed were causing morale problems or acting disloyally to DHS. She felt Jansa did not take these problems seriously. She was also concerned that Jansa's secretary and the DHS district director's secretary were sharing information in some way perceived as improper by Hall. She had a tape recorder she brought to her office for unrelated personal reasons, so she decided to record some conversations to confirm the abuses to Jansa. Jansa did not authorize her to tape any conversations, and she did not inform him of her intention to do so.

Between April 11 and 18, Hall taped five telephone conversations of employees without the knowledge of either of the participants. All of these conversations involved what Hall believed to be improper personal calls or the inappropriate sharing of information.

On April 26, Hall discovered that a tape she had made of employee conversations had disappeared. She reported the loss to Jansa and asked that she be permitted to discuss the matter with Dixie Clark, the agency's district director and Jansa's superior. The theft of the tape was reported to Clark by Jansa on April 27. Clark instituted an immediate investigation. On April 29, Hall orally admitted to Clark that she taped certain employee conversations, and she also made a written statement detailing the matter. Hall cooperated fully in Clark's investigation.

Following her investigation, Clark reported the matter to police and caused a complaint to be filed. Hall was arrested and charged with electronic and mechanical eavesdropping in violation of Iowa Code section 727.8 (1983), a serious misdemeanor. Clark also ordered the "executive override" feature removed from the agency's telephone system.

On May 2, Clark notified Hall that she would be suspended for three days without pay, pursuant to Iowa Code section 19A.9(16) and rule 570 Iowa Admin.Code 11.2. The stated written grounds for discipline involved Hall's unauthorized abuse and misuse of state telephones by listening to and taping telephone conversations of other employees. She was also temporarily assigned to the Benton County office of DHS. Hall did not appeal the suspension to the department. Iowa Code § 19A.14 (1983); 570 Iowa Admin.Code 11.2(5) and 12.2(8). Hall completed the three-day suspension and returned to work.

On July 7, Hall appeared in district court and entered a guilty plea to the criminal charge. She received a deferred judgment and was placed on probation for one year.

On August 10, a new notice of discipline was given to Hall by DHS that effective August 12, she would be demoted to a clerk-typist position and permanently transferred from the Linn County DHS office to Benton County.

Hall appealed the demotion to the department and then to the Iowa Merit Employment Commission, Iowa Code section 19A.14, and an evidentiary hearing was held in this contested case. See Iowa Code § 17A.12. In a proposed decision the hearing officer sustained the action of DHS in the demotion and transfer of Hall. On further appeal to the commission, in a 3–2 decision the commission affirmed the demotion of Hall.

Hall then filed a petition for judicial review in district court. Iowa Code §§ 19A.14 and 17A.19. The court reversed the commission's decision and held that under the language of Iowa Code section 19A.9(16) and 570 Iowa Admin.Code 11.2 the earlier suspension of Hall, after her monitoring and electronic recording activities were investigated, precluded DHS from imposing the later sanction of demotion. Further, in reviewing the record before the commission, the court found no substantial evidence of an independent nature to support the subsequent demotion and transfer of Hall. Iowa Code § 17A.19(8)(f).

The commission appealed to us. Iowa Code § 17A.20.

I. *Applicable law.* The state merit system of personnel administration, established in Iowa Code chapter 19A, applies to this appeal. Under the authority of chapter 19A, the merit employment commission is authorized to adopt rules for the administration and implementation of the system, including those relating to disciplinary actions. Iowa Code section 19A.9(16) states that the rules shall provide:

> For discharge, suspension, or reduction in rank or grade for any of the following causes: Failure to perform assigned duties, inadequacy in performing assigned duties, negligence, inefficiency, incompetence, insubordination, unrehabilitated alcoholism or narcotics addiction, dishonesty, any act or conduct which adversely affects the employee's performance or the agency employing him, and any other good cause for discharge, suspension, or reduction. The person discharged, suspended, or reduced shall be given a written statement of the reasons

for the discharge, suspension, or reduction within twenty-four hours after the discharge, suspension, or reduction. A copy thereof shall be filed with the director. All persons concerned with the administration of this chapter shall use their best efforts to insure that this chapter and rules hereunder shall not be a means of protecting or retaining unqualified or unsatisfactory employees, and to cause the discharge, suspension, or reduction in rank of all employees who should be discharged, suspended, or reduced for any of the causes stated in this subsection.

Pursuant to that statute, rule 570 Iowa Admin.Code 11.2 was promulgated by the commission. It provides:

Disciplinary actions. In addition to less severe progressive discipline measures, any employee is subject to suspension, reduction of pay within the same pay grade, disciplinary demotion or discharge. Suspension, reduction of pay within the same pay grade, disciplinary demotion or discharge of a permanent employee shall be based upon any of the following reasons: Inefficiency, insubordination, less than competent job performance, failure to perform assigned duties, inadequacy in the performance of assigned duties, dishonesty, improper use of leave, unrehabilitated substance abuse, negligence, conduct which adversely affects the employee's job performance or the agency of employment, conviction of a crime involving moral turpitude, conduct unbecoming a public employee, misconduct or any other just/good cause. Attainment of permanent status is not to be construed as a guarantee of the right to a position regardless of performance or conduct.

Respondent commission contends that the statute and corresponding rule permit all of the sanctions listed to be imposed on an employee subject to the state merit system. Petitioner argues that because the disciplinary measures are listed in the disjunctive, that only one such sanction may be imposed for a single act of misconduct. The commission then asserts in the alternative, that even if only one such sanction is available for each instance of employee misconduct, petitioner engaged in two separate improper actions and, therefore, the suspension and subsequent demotion of Hall was proper.

It is undisputed that if petitioner committed two separate acts of misconduct, she was properly suspended for the first instance and demoted for the second action. If, however, Hall did not engage in two separate acts of misconduct, then we must decide if the initial punishment, the three-day suspension, imposed on her by DHS became final and, thus, precluded the department from taking further action.

■ II. *Separate acts of misconduct.* Respondent commission argues that because Hall engaged in two separate acts of misconduct, DHS properly imposed two separate disciplinary sanctions on her. The commission asserts that the three-day suspension occurred due to Hall's unauthorized misuse and abuse of state telephones, and that the subsequent demotion and transfer was imposed after Hall pled guilty to the criminal charge of mechanical and electronic eavesdropping. This guilty plea was a separate action that adversely reflected on DHS, respondent contends, because it resulted in unfavorable media attention and generated critical responses from the public. Hall says her guilty plea was not a separate act of misconduct.

Hall does not contest her initial suspension. Accordingly, we only consider whether her plea of guilty to the criminal charge was an appropriate ground for discipline as "conduct which adversely affects the employee's job performance or the agency of employment." 570 Iowa Admin.Code 11.2; *see* Iowa Code § 19A.9(16). The hearing officer specifically found that Hall's guilty plea to Iowa Code section 727.8 and receipt of a deferred judgment did not constitute "conviction of a crime involving moral turpitude" under Iowa law. 570 Iowa Admin. Code 11.2; *see* Iowa Code § 19A.9(16). The commission adopted the hearing officer's proposed decision as its own.

The commission's finding that the additional discipline was properly imposed be-

cause Hall pled guilty to a criminal charge must be supported by substantial evidence when the record is viewed as a whole. Iowa Code § 17A.19(8)(f).

■ The record here shows that the adverse publicity and critical letters were received immediately following the filing of the criminal charges against petitioner, *not* after her guilty plea. It appears that Hall's misuse and abuse of the state phone system, for which she was suspended, generated this bad publicity, not her later guilty plea.

The commission also asserts that Hall conceded in her testimony before the commission that she was informed that other grounds for discipline might arise after her trial on the criminal charge. Respondent relies on the following exchange to support this assertion:

Q. What was your understanding as to [the suspension] whether that was to be the extent of your discipline or was there more—what was your knowledge? HALL: Well, I felt that at that time, I had had conversations with [superiors]; and I was under the impression that there—this would be handled as two separate issues; the internal and the external. With [the district director] explaining that, you know, the legal end of it would be separated from the internal. I felt that once that the suspension had been given, the internal portion that directly affected my job was over with; that that—was all there was to it. And I would take the suspension and continue to function in my supervisory capacity.

Although the testimony is somewhat ambiguous, it appears that Hall believed that the suspension was the end of the departmentally-imposed discipline and that she would not be subject to further severe sanctions. Apparently, she believed that her plea of guilty was merely the "legal end" of the whole matter, and not a separate ground for punishable misconduct.

We agree with Hall. The plea of guilty arose out of the same operative facts that served as grounds for petitioner's first suspension. It was not a separate act of misconduct on the part of petitioner. Substan-

tial evidence does not support the commission's finding to the contrary.

■ III. *Permissible disciplinary action.* Although we have concluded that Hall's guilty plea was not a second separate instance of misconduct, we still must determine whether the demotion and transfer, imposed after the suspension, was legally permissible under the applicable statute and rules.

Under Iowa Code section 19A.9(16) and rule 11.2, the appointing authority, here DHS, has the power to impose various disciplinary actions on employees, including the severe measures of suspension, reduction of pay within the same pay grade, demotion or discharge. DHS exercised its authority in suspending Hall for three days without pay after a full investigation of her monitoring activities.

■ This initial disciplinary action was not appealed by Hall. Under the merit employment rules, a permanent employee, like Hall, may appeal to the appointing authority within seven days after the effective date of the disciplinary action. 570 Iowa Admin.Code 12.2(8); *see* Iowa Code § 19A.14. Both the statute and the rule contain additional provisions which govern further appeal to the merit employment commission. Here, petitioner Hall did not pursue an appeal although she would have been permitted to do so under the merit employment rules. Because the time for further agency review had passed with no review requested, the three-day suspension of Hall became the final agency decision or action in the matter. *See Foley v. Iowa Department of Transportation,* 362 N.W.2d 208, 210 (Iowa 1985).

■ At the time DHS' disciplinary decision became final, the agency was without further power to proceed against Hall and to impose further sanctions against her relating to the same act of misconduct. *Id.; Franklin v. Iowa Department of Job Service,* 277 N.W.2d 877, 881 (Iowa 1979). As we stated in *Franklin:*

Once an agency decision has become final, there is no statutory authorization for subsequent agency review. Administrative agencies do "not possess common law or inherent powers, but only the powers which are conferred by statute." [Citations omitted.]

*Id.*

Accordingly, the district court correctly concluded that because petitioner had not committed a further act of misconduct, DHS was precluded from ordering further disciplinary action based on the same factual incident.

IV. *Conclusions.* We have concluded: 1) the record does not contain substantial evidence that petitioner's guilty plea to the criminal charge was a separate act of misconduct apart from her misuse of the state phone system; and 2) that after her suspension, which was not appealed and thus became final, DHS was precluded from imposing on Hall the further sanction of demotion. The judgment of the district court is affirmed.

Under our view of the case, it is unnecessary to discuss other contentions made by the parties.

AFFIRMED.