STATE of Iowa, Appellee,

v.

Donald Dale REID, Appellant.

No. 85–1571.

Supreme Court of Iowa.

Oct. 15, 1986.

R. Scott Rhinehart of Richard Rhinehart & Associates, Sioux City, for appellant.

Thomas J. Miller, Atty. Gen., Elizabeth E. Ciebell, Asst. Atty. Gen., Patrick C. McCormick, Co. Atty., and Dennis D. Hendrickson, Asst. Co. Atty., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, CARTER, and LAVORATO, JJ.

HARRIS, Justice.

Defendant is charged with second-degree sexual abuse under Iowa Code section 709.-3(2) (1985). He moved to suppress his tape-recorded telephone conversation with the complaining witness, a videotape of his interrogation by police, and his confession. We allowed this interlocutory appeal to review a trial court ruling which denied the motion. We affirm.

Defendant Donald D. Reid, 27, is a mildly retarded man with a full-scale intelligence quotient between seventy-four and seventy-seven. A defense expert testified his reading skills are comparable to persons at a beginning second-grade level which place his language and comprehension skills among society's lowest. He was once a special education student and received a special diploma for his school attendance and efforts. He is unmarried, with no dependents. He has held various odd jobs, most recently as a dishwasher in a restaurant.

The ten-year-old complaining witness is B.C., whose mother is a girlfriend of defendant's brother. Defendant, his brother, the child, and the child's mother lived together. Sioux City police arranged for a telephone call to be placed by the child to defendant on May 17, 1985. Defendant was at work. The child told the defendant a policeman had lectured at her school and handed out pamphlets, saying that what defendant had been doing to her was wrong.

Defendant responded that he knew it was wrong and promised to stop it immediately. He asked if she had told anyone. When the child said she had told her mother the defendant replied, "[I]'ll bet your mother hate me for it...." The child then suggested that the defendant should tell police what he had done and that she would tell them if he refused. He responded, "[B.C.], do you want me to go to jail? That's what it end up being." Defendant then proposed that the child and her mother sit down and discuss the matter with him and his older brother, without going to the police.

At this point the conversation ended. It had been placed and tape-recorded at the suggestion of Sergeant Anthony Sunclades of the Sioux City police department. Sergeant Sunclades was at no time a party to the call although it was made at his suggestion and with the cooperation and consent of the child and her mother. No court order was obtained prior to recording the conversation.

After the tape-recorded telephone conversation Sergeant Sunclades returned to the police station and placed an unrecorded phone call to defendant at work. He told defendant there were "some allegations that he had committed a criminal act," and requested his presence at and asked him to come to the police station to discuss the matter. Defendant arrived within twenty minutes.

Upon arriving the defendant was placed in an interview room. Sergeant Sunclades left the room long enough to activate a videotape machine and then returned to advise defendant of his constitutional rights. Defendant acknowledged his understanding and signed a form to that effect. He agreed to discuss the alleged sexual abuse. Defendant was not told that

his conversation was being videotaped at the time.

During the videotaped interview defendant was asked if he wanted to call someone and he responded, "No one will trust me." Sergeant Sunclades accused defendant of raping the child and stated, inaccurately, that the child had suffered a "perforated hymen." Defendant confessed that he had sexually abused the child and made several inculpatory statements and admissions against interest. At the conclusion of the interview defendant was arrested and was subsequently charged with sexually abusing the child.

Defendant thereafter moved to suppress the telephone conversation, the videotape of his interrogation, and his confession. His motion was overruled and we granted this interlocutory appeal. *See* Iowa R.App.P. 2.

■ I. Defendant first contends his uncounseled inculpatory statements and confession to police should have been suppressed because of his inability to effectuate a knowing, intelligent, and voluntary waiver of his constitutional rights. He says his mental subnormality, low level of education, and limited ability to understand complex words and questions prevented him from appreciating the nature and extent of his constitutional rights, and from waiving those rights before talking with police. Our review on this constitutional claim is de novo. *State v. Snethen*, 245 N.W.2d 308, 311 (Iowa 1976).

■ The state is charged with the burden of proving the voluntariness of a defendant's confession by a preponderance of the evidence, as a prerequisite to its admission in evidence. *State v. Davidson*, 340 N.W.2d 770, 771 (Iowa 1983); *State v. Hahn*, 259 N.W.2d 753, 758 (Iowa 1977). And, where the state is unable to sustain its burden, the defendant's inculpatory statements and confession must be suppressed and may not be admitted into evidence. *See generally Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619,

30 L.Ed.2d 618 (1972); *State v. Brown*, 341 N.W.2d 10, 16 (Iowa 1983); *State v. McAteer*, 290 N.W.2d 924 (Iowa 1980).

■ The test of voluntariness of an inculpatory statement or confession is "whether the defendant's will was overborne by the police officers," considering "the totality of the circumstances." *State v. Coburn*, 315 N.W.2d 742, 745 (Iowa 1982); *see also State v. McClelland*, 164 N.W.2d 189, 195 (Iowa 1969). Factors relevant to this assessment include:

> [T]he defendant's knowledge and waiver of his *Miranda* rights, *State v. Munro*, 295 N.W.2d 437, 443 (Iowa 1980); the defendant's age, experience, prior record, level of education and intelligence, *id.;* the length of time defendant is detained and interrogated, *State v. Jump*, 269 N.W.2d 417, 424 (Iowa 1978); whether physical punishment was used, including the deprivation of food or sleep, *Munro*, 295 N.W.2d at 443; defendant's ability to understand the questions, *State v. Jump*, 269 N.W.2d at 424; the defendant's physical and emotional condition and his reaction to the interrogation, *State v. Cullison*, 227 N.W.2d 121, 127 (Iowa 1975); whether any deceit or improper promises were used in gaining the admissions, *Munro*, 295 N.W.2d at 443; any mental weakness the defendant may possess, *State v. Hahn*, 259 N.W.2d 753, 758 (Iowa 1977)....

*State v. Hodges*, 326 N.W.2d 345, 348 (Iowa 1982); *see also State v. Coburn*, 315 N.W.2d at 745 (other factors bearing on voluntariness are the defendant's awareness of the alleged crime and his ability to understand his constitutional rights and the consequences of waiving them).

■ Thus, although relevant, a defendant's mental subnormality is but a single factor for the courts to consider in appraising the voluntariness of a confession. In *State v. Fetters*, 202 N.W.2d 84, 89 (Iowa 1972), we said:

> [M]ental subnormality on the part of one confessing to a crime does not of itself deprive the confession of voluntariness or bar its admission in evidence so long

as the subnormality has not deprived the person in question of the capacity to understand the meaning and effect of the confession.

*Citing* Annot., 69 A.L.R.2d 348, 350 (1960) ("There is general agreement among the courts that a confession of crime is not inadmissible merely because the accused, who was not insane, was of less than normal intelligence."); *see also* 23 C.J.S. *Criminal Law* § 828 (1961) (mental incapacity which does not render a person incompetent generally will not require exclusion of the confession); *State v. Snethen,* 245 N.W.2d 308, 315 (Iowa 1976); *State v. Winfrey,* 221 N.W.2d 269, 273 (Iowa 1974).

In a number of cases we have found mildly retarded persons capable of making an effective waiver of their constitutional rights. In *State v. Conner,* 241 N.W.2d 447 (Iowa 1976) an illiterate defendant with an I.Q. of 72 and a sixth-grade education was found capable of waiving his rights in spite of psychological tests which showed he had more difficulty understanding abstract concepts than ninety-seven percent of the population. *Id.* at 453.

*State v. Cook,* 330 N.W.2d 306 (Iowa 1983), involved a 21–year–old male who had been neglected and physically abused as a child and was being treated by a psychiatrist. Cook had low average intelligence and a drug abuse problem. Cook had ten years of education, generally receiving "zeros and Fs," and he harbored a "severe passive-aggressive personality disorder." He nevertheless made a valid voluntary waiver of his constitutional rights. *Id.* at 308.

In *State v. Fetters,* 202 N.W.2d 84, 89–90 (Iowa 1972), a defendant with an I.Q. of 67, who was a special education student through the sixth or seventh grade and who had a low reading comprehension ability, made a knowing and intelligent waiver of his constitutional rights. In *State v. Hahn,* another waiver was held voluntary. Hahn had a long history of mental illness but during interrogation demonstrated an ability to listen and comprehend questions. He clearly and accurately related details and expressly stated an understanding of his *Miranda* warnings. 259 N.W.2d at 758.

Cases of retarded persons whose waivers we have found to be involuntary are also illustrative because factors in addition to mental retardation affected the will of the accused. *See, e.g., In the Interest of Thompson,* 241 N.W.2d 2, 7 (Iowa 1976) (defendant, age 17, abandoned at early age, spent four years in mental health center, had I.Q. of 71, was frightened, insecure, frustrated, had significant signs of brain damage and was deprived of sleep and consultation with adult friend, custodian or lawyer; confession suppressed); *State v. Cullison,* 227 N.W.2d 121, 128–29 (Iowa 1975) (defendant subjected to physically and psychologically intensive interrogation and suffered probable psychological reaction to combination of drugs and situation; confession deemed involuntary).

The controlling point to be derived from these cases is that mental subnormality is not, by itself, enough to render a person incapable of making a voluntary statement. Yet, mental subnormality is all this defendant can offer as a bar to admitting the evidence he seeks to suppress. All other facts here tend to support the State's claim of voluntariness.

■ Defendant voluntarily reported to the police station unaccompanied by officers immediately after Sergeant Sunclades called him. He expressed his willingness to cooperate with police, and his *Miranda* warnings were read to him before any discussion of the alleged crime took place. The defendant's interrogation was conducted in an office-like setting with only Sergeant Sunclades present. Although the defendant's interview was being videotaped from an adjoining room, he was unaffected by the camera; he was unaware it was being used.

Defendant has a high school diploma and has been able to work as a dishwasher to support himself. His statement to police that no one would trust him, and his admission to the child that what he had done to

her was "wrong," demonstrate his ability to distinguish right from wrong. And his tape-recorded question: "[B.C.], do you want me to go to jail?" demonstrates the defendant's realization that his conduct was criminal.

Sergeant Sunclades' interrogation of the defendant occurred during waking hours and was less than one hour in duration. There is no evidence of coercion, intimidation, deceit or promises of leniency in obtaining the confession. Nor is there any evidence of threats of physical punishment or the deprivation of food or sleep. The defendant appeared able to understand the questions asked of him, admitting some facts and denying others. He even expressed fear that the matter would be publicized.

Even accepting defendant's mild retardation and low I.Q., it does not appear from the totality of circumstances that his will was overborne by the police officer who questioned him. He remained calm and comprehended the nature and extent of his constitutional rights, making a considered and voluntary choice to waive them. The motion was properly overruled.

II. Defendant's second assignment of error also addresses the trial court's refusal to suppress the tape of his interrogation. He complains of what he calls a false statement made by Sergeant Sunclades that a medical examination of the child revealed a "perforated hymen." Defendant says this coerced or tricked him into making a confession he would not otherwise have made. He says the tape should be suppressed as the fruit of the officer's "coercive efforts and false statements." *See State v. Ware*, 205 N.W.2d 700, 703 (Iowa 1973) ("The use in a state criminal trial of a defendant's confession obtained by coercion ... is forbidden by the Fourteenth Amendment.").

■ Evidence that an accused was "threatened, tricked or cajoled" into waiving constitutional rights indicates a waiver was not voluntary. *See Miranda v. Arizona*, 384 U.S. 436, 476, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694, 724–25 (1966). On the other hand it is far from clear that this officer

engaged in such conduct. Rather it appears that the inaccurate statement regarding the perforated hymen was based on an honest but mistaken assumption. The assumption resulted after the child suggested that defendant had sexual intercourse with her. Indeed, the medical report filed in the record appears less than conclusive on the issue. It stated "[g]ently, with examination then was tried to inspect the hymenal ring, it all appeared to be normal, of what was visible...."

It does not appear that the statement, if it was inaccurate, was made in an attempt to induce a confession or to exert improper influence over the defendant. It is far from clear how an inaccuracy on this subject could have induced the accused into confessing. Under the totality of circumstances Sergeant Sunclades' statement cannot be said to have "induced" or influenced defendant's confession or rendered his waiver of rights involuntary. *See Davidson*, 340 N.W.2d at 773.

■ Even if the officer had tried to mislead or deceive the defendant by making the statement, such deception, standing alone, would not have rendered the confession involuntary. Deception is merely one factor to be considered in evaluating the totality of the circumstances surrounding the confession. *State v. Oliver*, 341 N.W.2d 25, 28 (Iowa 1983). The record falls far short of demonstrating an undermining of defendant's "ability to make a choice [regarding] whether or not to make a statement," *id.* at 29–30, *citing* A.L.I. Model Code of Pre-Arraignment Procedure, § 140.4.

At the point in the interrogation when Sergeant Sunclades made his statement regarding the "perforated hymen," the defendant had already admitted there was "some truth" to the child's allegations that he had taken "sexual liberties" with her. The defendant had already explained the nature of the sex acts he had engaged in with her. The trial judge found Reid was unresponsive to Sunclades' statement, and that it "could not be considered to be the

reason for which the defendant made his statement to the police officer." We agree.

The assignment is without merit.

III. Defendant argues that the tape-recorded telephone conversation, as well as the police videotape of his confession, were "illegally obtained" under Iowa Code section 727.8 (electronic and mechanical eavesdropping statute). We recently dealt with this statute in *Hall v. Iowa Merit Employment Commission,* 380 N.W.2d 710, 713–15 (Iowa 1986). The statute provides:

> Any person, having no right or authority to do so, who taps into or connects a listening or recording device to any telephone or other communication wire, or who by any electronic or mechanical means listens to, records, or otherwise intercepts a conversation or communication of any kind, commits a serious misdemeanor; *provided, that the sender or recipient of a message or one who is openly present and participating in or listening to a communication shall not be prohibited hereby from recording such message or communication;* and further provided, that nothing herein shall restrict the use of any radio or television receiver to receive any communication transmitted by radio or wireless signal.

Iowa Code § 727.8 (1985) (emphasis added).

 The emphasized language provides a clear exception for "senders and recipients" of messages, as well as those "openly present and participating in or listening to communications." Persons thus exempted may legally record their conversations; under the exemption consent of all conversing parties is not required. Nor is a court order necessary before one conversing party may legally record it.

Both tapes here fall within the exception. The child participated in the telephone conversation and participated in recording it. Sergeant Sunclades participated in the interview and recorded it.

The videotaping of the interview by Sergeant Sunclades comports with our pronouncement in *State v. Holderness,* 191

N.W.2d 642, 647 (Iowa 1971) (urging officers to record private interviews with an accused). *See also United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (no eavesdropping is involved in participant or consensual monitoring since the government agent is free to testify to what was heard and the tape merely preserves credibility).

The assignment is without merit.

There was no error in the ruling on defendant's motion. The case is remanded for further proceeding.

AFFIRMED.