STATE of Iowa, Appellee,

v.

Bruce Allen HATTER, Appellant.

No. 86–1056.

Supreme Court of Iowa.

Oct. 21, 1987.

Mark C. Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Denver D. Dillard, Co. Atty. and Harold Denton, Asst. Co. Atty., for appellee.

SCHULTZ, Justice.

Defendant was convicted of first degree kidnapping in violation of Iowa Code section 710.2 (1981) and sentenced to life imprisonment without parole, *see id.* §§ 710.2, 902.1. This was his third trial and conviction for the same offense. His first two convictions were reversed on appeal. *See State v. Hatter,* 342 N.W.2d 851 (Iowa 1983) (*Hatter* I); *State v. Hatter,* 381 N.W. 2d 370 (Iowa App.1985) (*Hatter* II).

On this appeal defendant maintains that the trial court committed numerous errors. These claimed errors involve: (1) jury instructions, (2) sufficiency of the evidence, (3) impeachment by suppressed statements, and (4) constitutional vagueness and eighth amendment issues.

The relevant facts of this case are as follows. On December 1, 1981, the victim was leaving Harding Junior High School in Cedar Rapids after visiting her mother who worked there. Defendant grabbed her from behind and forced her into her own car at knife point, handcuffed her and drove her approximately five miles away from Harding Junior High to a rural area surrounded by fields. After driving into a field and forcing the victim to perform an oral sex act on him, defendant began to drive away with the victim still handcuffed and in the passenger seat. The car became stuck in a ditch, and at some point defendant removed the handcuffs from her so they could walk down the road to look for help. The victim testified that while they were walking, the defendant was going to stab her with the knife, but she grabbed his hand and talked him into giving her the knife, in return for her promise not to say anything about what had happened. The two finally flagged down a pickup truck which pulled the car out of the ditch. They drove back to Harding Junior High where defendant had left his car.

Although the kidnapping and sexual abuse involved in this case occurred December 1, 1981, it was not brought to the attention of the police until sometime later. Defendant was charged with the December 1 kidnapping and sexual abuse after making certain inculpatory statements follow-ing his arrest for another crime. In *Hatter* I we held that these statements were the fruit of an unlawful search and were thus inadmissible at trial. *See* 342 N.W.2d at 856–57. At defendant's second trial he was also convicted. The Iowa Court of Appeals reversed this conviction because the trial court had abused its discretion in failing to disqualify a juror for cause. *See Hatter* II, 381 N.W.2d at 376.

Many of defendant's claims of error involve the statutes under which he was convicted. The pertinent parts of those statutes are as follows:

*Kidnapping defined.*

A person commits kidnapping when the person either confines a person or removes a person from one place to another, knowing that the person who confines or removes the other person has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:

. . . .

3. The intent ... to subject the person to a sexual abuse.

Iowa Code § 710.1;

*Kidnapping in the first degree.*

Kidnapping is kidnapping in the first degree when the person kidnapped, as a consequence of the kidnapping, ... is intentionally subjected to torture or sexual abuse.

Iowa Code § 710.2. We now turn to defendant's contentions.

I. *Jury Instructions.*

██ A. *Definition of "confines" or "removes".* To convict a person of kidnapping, the State must prove that the person charged "confine(d) a person or remove(d) a person from one place to another...." Iowa Code § 710.1. While all sexual abuse involves some degree of confinement or removal, not all sexual abuse rises to the level of kidnapping. *See State v. Rich,* 305 N.W.2d 739, 742 (Iowa 1981). Defendant maintains that the trial court erred by instructing the jury on the confinement or removal element as follows:

One of the essential elements of Kidnapping which the State must prove beyond a reasonable doubt is that (the victim) was confined or removed or both. This requires more than the confinement or removal that is inherent within the commission of the offense of sexual abuse, as it is alleged to have occurred in this case.

Although no minimal period of confinement or distance of removal is required, it must exceed that which is incidental or dependent upon the commission of any sexual abuse and must be more than slight, inconsequential or as an incident inherent to any sexual abuse so that the confinement or removal or both has a significance separate and apart from any sexual abuse.

Such confinement or removal or both may exist because it substantially increases the risk of harm to the victim or significantly lessens the risk of detection or significantly facilitates escape. However, it is for you, the jury, after a full and impartial consideration of the evidence admitted during the trial, to determine whether there is confinement or removal or both as defined herein.

This instruction was essentially the same as the one given and referred to in *Hatter* I, 342 N.W.2d at 858, and identical to the one given and referred to in *Hatter* II, 381 N.W.2d at 375–76.

Defendant urges that this instruction, which deviates slightly from Iowa Uniform Jury Instruction 1007, misstates the law and undercuts his theory of defense. Uniform Instruction 1007 states that the period of confinement or the distance of removal "must exceed that which is *normally* incidental or dependent upon the commission of" sexual abuse. (Emphasis added.) The instruction given in the present case left out the word "normally." In addition, the court added the term "any" to the phrase "upon the commission of sexual abuse" so that it read "any sexual abuse."

Defendant argues that section 710.1 requires the State to prove that the confinement or removal exceeds that which typically occurs in the commission of sexual abuse. Deletion of the word "normally" and addition of the word "any," he argues, relieves the State's burden because it allows a jury to convict whenever it concludes that the confinement or removal exceeds that which occurs in the commission of any possible sexual abuse, but not necessarily the typical sexual abuse. We find no merit in this argument.

The deviations from the uniform instruction do not significantly change the definition of confinement or removal and do not deprive defendant of any defense. We previously have recognized that every sexual abuse involves some degree of confinement or removal of the victim. *Rich*, 305 N.W. 2d at 742. At some point, however, the confinement or removal may rise to the level of kidnapping. In *Rich*, we drew the line between sexual abuse and kidnapping:

[O]ur legislature, in enacting section 710.1, intended the terms "confines" and "removes" to require more than the confinement or removal that is an inherent incident of commission of the crime of sexual abuse. Although no minimum period of confinement or distance of removal is required for conviction of kidnapping, the confinement or removal must definitely exceed that normally incidental to the commission of sexual abuse.

*Id.* at 745. While we did use the word "normally" in *Rich*, the trial court's failure to do so is not fatal to the instruction. The instruction, as given, aptly conveys the message that the confinement or removal must exceed that which is inherent in the crime of sexual abuse. We also conclude that inclusion of the word "any" is neither significant nor confusing. While we approve the instruction as given, we do not depart from past suggestions that trial courts should generally adhere to the uniform instructions.

Defendant finally urges that neither the instruction given nor the uniform instruction correctly incorporates the requirement of *Rich*, namely, that the confinement or removal "definitely" exceed that which is incidental to the commission of sexual abuse. Neither instruction includes the word "definitely." When we used the

word "definitely" in *Rich* we did not intend that its use would elevate the quantity or quality of proof required in a criminal case. Furthermore, we do not believe that the deletion of this word, or the failure to further qualify the word "exceed," will confuse the jury or cause them to engage in speculation or conjecture in determining the required proof. We believe that persons of ordinary intelligence will readily understand what confinement or removal exceeds that which is incident to the commission of sexual abuse without further explanation.

We have previously held that the uniform instruction correctly states the requirements of section 710.1, as interpreted by *Rich. See State v. Doughty*, 359 N.W. 2d 439, 441 (Iowa 1984). The trial court's instruction is essentially the same as the uniform instruction. We see no reason to change our opinion that this instruction incorporates the requirements of *Rich.*

■ B. *Failure to instruct on intended confinement or removal.* Defendant claims that the trial court erred in failing to give a proposed instruction on specific intent to confine or remove the victim. At the root of this claimed error, and the rejected instruction, is defendant's assertion that the State must prove not only that he confined or removed the victim as defined by *Rich*, but also that he had the specific intent to do so in a manner that exceeded the confinement or removal incident to sexual abuse. We reject this argument and hold that the trial court properly refused defendant's proposed instruction.

The intent element under section 710.1 requires the State to prove that the person doing the confining or removing did so with the knowledge that he or she had neither the authority nor consent to do so. Defendant would have us add an additional intent requirement to the one stated in the statute. We decline the invitation.

■ Neither section 710.2, prohibiting kidnapping in the first degree, nor section 710.1, defining kidnapping, speaks of a separate and independent element of intent to confine or remove beyond that which is incident to sexual abuse. In construing

statutes, the court searches for the legislature's intent as shown by what it actually said, rather than what it should or might have said. *State v. Peterson*, 347 N.W.2d 398, 402 (Iowa 1984). Courts may not, under the guise of construction, enlarge or otherwise change the terms of a statute. *State v. Vietor*, 208 N.W.2d 894, 898 (Iowa 1973). The express mention of one thing in a statute implies the exclusion of others. *In re Estate of Wilson*, 202 N.W.2d 41, 44 (Iowa 1972). With these rules of construction in mind, we conclude that sections 710.1 and 710.2 do not require a specific intent to confine or remove in a manner which exceeds that which is incident to sexual abuse. A contrary holding would enlarge and change the terms of the statute under the guise of construction.

■ C. *Refusal to instruct on the penalties for the offense charged and lesser included offenses.* Defendant maintains that the trial court's refusal to instruct the jury on the penalties for kidnapping in the first degree and the lesser included offense of sexual abuse denied him due process and equal protection of the law. This same argument was rejected by the Iowa Court of Appeals in *Hatter* II, 381 N.W.2d at 375. We agree with the reasoning given there and again reject this argument.

II. *Sufficiency of the Evidence.*

Defendant claims that there was insufficient evidence on the confinement or removal element to sustain his conviction. He points to the State's failure to establish what confinement and removal *is* incident to sexual abuse. Without such proof, defendant argues, the jury cannot decide what confinement or removal exceeds that which is incident to sexual abuse. When sufficiency of the evidence is challenged in a criminal appeal, we review the evidence in the light most favorable to the State and indulge all legitimate inferences, reasonably arising from the evidence, which support the verdict. *State v. Mulder*, 313 N.W.2d 885, 888 (Iowa 1981), *cert. denied*, 459 U.S. 841, 103 S.Ct. 90, 74 L.Ed.2d 83 (1982).

As indicated earlier, the confinement or removal required for kidnapping must exceed that which is incident to the crime of sexual abuse. *Rich,* 305 N.W.2d at 745. This element may be proved by showing the extent of the removal or confinement. While a jury may not rely upon evidence that merely creates speculation, suspicion or conjecture, *see State v. Hamilton,* 309 N.W.2d 471, 479 (Iowa 1981), it may utilize all of the direct and circumstantial evidence, and the inferences from that evidence, in determining whether or not the required removal or confinement is proven. It is not necessary for the State to present evidence concerning the normal confinement or removal that exists in a sexual abuse. This is a matter within the experience and knowledge of the jury.

The State proved that the victim was removed from the parking lot of Harding Junior High School to a rural area five miles away and was confined by force of a death threat and assault with a knife and handcuffs. This evidence alone is sufficient to support a jury finding that defendant confined or removed the victim in a manner which exceeded the removal or confinement incident to a sexual abuse. The State does not need to present evidence of what confinement or removal normally exists with sexual abuse. We hold that the evidence was sufficient to sustain proof of the element of confinement or removal, as required by the kidnapping statute. *See, e.g., State v. Hardin,* 359 N.W.2d 185 (Iowa 1984) (evidence that defendant removed victim from car parked in front of house to inside of house and confined her for two hours is sufficient to support jury instruction on first degree kidnapping); *State v. Ristau,* 340 N.W.2d 273 (Iowa 1983) (jury question on confinement and removal presented where victim, after voluntarily getting into a car, is driven two miles away to a secluded area against her will).

III. *Impeachment by Suppressed Statements.*

In *Hatter* I we reversed defendant's conviction and remanded for a new trial be-cause defendant's inculpatory statements were the fruit of an unlawful arrest and should not have been used in the prosecutor's case-in-chief. 342 N.W.2d at 857. Defendant now claims these statements may not be used to impeach his testimony because they were not voluntary. In *Hatter* II the court held these statements could be used to impeach defendant if he chose to testify, but did not address the voluntariness issue. 381 N.W.2d at 372–74.

Before trial, defendant filed a motion to suppress, claiming the statements were involuntary and that use of them to impeach his testimony would violate his constitutional rights. On appeal, defendant claims that the totality of the circumstances surrounding his arrest and subsequent interrogation reveals that any statements made were involuntary because they resulted from psychological overbearing. He specifically refers to the facts that questioning began when he was unclothed, that his grandfather was threatened with arrest in his presence, that he was held incommunicado in a small interrogation room, and that he was offered leniency in return for his statements.

Statements obtained in violation of the constitution, that are otherwise inadmissible, are admissible for impeachment purposes if voluntarily made. *Mincey v. Arizona,* 437 U.S. 385, 397–98, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290, 303 (1978). Use of involuntary statements in a criminal trial is a denial of due process of law. *Id.* In determining whether defendant's statements were voluntary, the court must examine the totality of the circumstances to determine whether the defendant's will was overborne by the police. *See id.* at 401, 98 S.Ct. at 2418, 57 L.Ed.2d at 306; *State v. Reid,* 394 N.W.2d 399, 402 (Iowa 1986) (citing *State v. Coburn,* 315 N.W.2d 742, 745 (Iowa 1982)). Statements are involuntary if they were not the products of a rational intellect and a free will. *See Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770, 782 (1963). The prosecution bears the burden of proving voluntariness by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619,

626–27, 30 L.Ed.2d 618, 627 (1972); *Reid*, 394 N.W.2d at 402.

■ In our de novo review we find that defendant's statements were voluntarily given to the officers. We give credence to the trial court's findings of fact. *See Hatter* I, 342 N.W.2d at 854. One of defendant's points concerns his nakedness when the questions began. However, defendant, who was arrested in the shower, admitted that he was told to put his underwear on and shortly thereafter was allowed to dress. Defendant was not questioned until he was given his constitutional rights and he did not request an attorney. The signed statements were given after defendant was in custody for only four and one half to five hours and while he was coherent and not under the influence of drugs or alcohol. Additionally, defendant was an intelligent high school graduate with a 3.2 grade average who had previously been enrolled in a pre-med program at a state university. We agree with the trial court finding that under the totality of the circumstances defendant's confession was freely and voluntarily given.

Defendant also claims that he was promised leniency. Statements are involuntary when induced by promises of leniency. *State v. Kase*, 344 N.W.2d 223, 225–26 (Iowa 1984). Our review of the evidence causes us to give greater credit to the peace officers' testimonies that no promises or threats had been made to the defendant to obtain his statement, and that defendant had not been told things would go easier for him if he gave his statement.

■ Defendant contends that the ruling allowing evidence of his statements for impeachment purposes infringes on his right to testify and deny the elements of the offense. He argues that he should be able to testify without giving leave to the government to introduce illegally secured evidence. We disagree. Defendant does not have the right to commit perjury, and the use of illegally obtained evidence to impeach does not violate the policies behind the exclusionary rule. *See United States v. Havens*, 446 U.S. 620, 627–28, 100 S.Ct. 1912, 1916–17, 64 L.Ed.2d 559, 566 (1980).

IV. *Constitutionality of the Kidnapping Statute.*

■ A. *Vagueness.* Defendant urges that sections 710.1 and 710.2, especially the "confines ... removes" element of the crime of kidnapping, are unconstitutionally vague. He claims that this court's decision in *Rich*, which distinguished kidnapping from sexual abuse, did not cure this vagueness.

This claim was rejected in both *Hatter* I, 342 N.W.2d at 857, and *Hatter* II, 381 N.W.2d at 374. We again reject defendant's contention for the reasons previously given.

■ B. *Eighth amendment.* Defendant argues that life imprisonment without parole for first degree kidnapping is cruel and unusual punishment per se, and as applied. Again, the argument has previously been rejected. *See Hatter* II, 381 N.W.2d at 374–75. We adopt the reasoning of the Iowa Court of Appeals on this issue and again reject defendant's argument.

In conclusion, we reject all of defendant's claims of error whether we have specifically addressed them or not, and affirm defendant's conviction and sentence.

AFFIRMED.

All Justices concur except SNELL, J., who takes no part.